145 So.2d 858 (1961)
George V. REED and His Wife, Clara M. Reed, Petitioners,
v.
Vivian FAIN, Respondent.
No. 31122.
Supreme Court of Florida.
November 1, 1961.
On Rehearing October 19, 1962.
*860 W. Wallace Shafer, Lakeland, for petitioners.
James S. Welch, of Welch & Dooley, Lakeland, J. Lewis Hall, Tallahassee, for respondent.
THORNAL, Justice.
By petition for writ of certiorari we are requested to review a decision of the District Court of Appeal, Second District, appearing at 122 So.2d 322, because of an alleged conflict on the same point of law with prior decisions of this Court.
Our judgment turns on the interpretation and application of Section 95.23, Florida Statutes, F.S.A., which applies to certain instruments which have been on record for twenty years or more.
We rely upon the opinion of the district court for our factual summary. For continuity, we repeat a few of the significant facts. In 1930, J.M. Reed, joined by his wife, Stella, conveyed his homestead to his son the petitioner, George V. Reed. George immediately reconveyed the property to J.M. and his wife in order to create an estate by the entirety. Title originally was held by J.M. alone. Both conveyances were without consideration. In 1951, the father and mother conveyed the property to their son George, reserving to themselves a life estate with survivorship. The 1951 conveyance had no effect upon the outcome of this litigation because at the time of its execution, J.M. Reed lacked the mental capacity to execute the document. The factual statement of the district court then contains the observation "Stella M. Reed conveyed her life estate to George in 1955." (Emphasis added.) She died within a year. In 1957, respondent Vivian Reed Fain, daughter of J.M. and Stella Reed, filed this suit in equity to obtain cancellation of the deeds above mentioned. She alleged fraud and undue influence, lack of consideration and the violation of her rights under the Florida Homestead Laws. The defendants in the trial court, who are the petitioners here, filed an answer in which they relied upon Section 95.23, Florida Statutes, F.S.A., in view of the fact that the 1930 conveyance to J.M. and Stella Reed had been of record without adverse claim for more than twenty years. To give the subject statute the effect contended for by the plaintiffs below, the chancellor concluded that when J.M. Reed died in 1954, he held title to the property as a homestead, that it inured to his widow as a life estate and then to his two children in fee as tenants in common. He held that the 1957 deed from Stella to her son George, conveyed only her life estate because in his view she had nothing else to convey. The chancellor reached this conclusion by holding the 1930 transaction between the Reeds and their son George, as being an ineffective attempt to alienate the homestead without consideration.
The decision of the chancellor was affirmed by the district court, 122 So.2d 322, although the judges of that court were not in accord as to their reasons therefor. We are now requested to review the decision of the district court because of an alleged direct conflict with prior decisions of this Court in Barnott v. Proctor, 128 Fla. 63, 174 So. 404, and Thompson v. Thompson, Fla., 1954, 70 So.2d 555.
At the outset, we deem it advisable to invite attention to an aspect of the decision under review which might escape a mere casual reading. The apparent majority decision is actually not the decision of the court on the critical aspect of the case which is the interpretation to be given Section 95.23, supra. It will be noted that on this aspect of the problem the controlling *861 decision is really designated as a specially concurring opinion. In our discussion of the matter we treat the so-called specially concurring opinion as the decision of the district court to be measured by the rules of the alleged prior conflicting opinions of this Court.
Section 95.23, Florida Statutes, F.S.A., provides as follows:
"Limitations where deed or will of record for twenty years or more.  After the lapse of twenty years from the record of any deed or the probate of any will purporting to convey lands no person shall assert any claim to said lands as against the claimants under such deed or will, or their successors in title.
"After the lapse of twenty years all such deeds or wills shall be deemed valid and effectual for conveying the lands therein described, as against all persons who have not asserted by competent record title an adverse claim."
The majority of the court of appeal had the view that the twenty year period prescribed by this statute begins to run from the date of record of a deed or probate of a will. Unless something is read into the statute which is not apparent from the clear language thereof, this conclusion is the correct one. It is supported by the prior decisions of this Court in Moyer v. Clark, Fla., 1954, 72 So.2d 905; Thompson v. Thompson, supra, and Barnott v. Proctor, supra.
The judge writing the minority view of the district court on this subject makes reference to an article by Dr. James W. Day, entitled "Curative Acts and Limitations Acts Designed to Remedy Defects in Florida Land Titles  IV.", IX U. of Fla. L.Rev. 145. As expressed in the cited article it is the view of Dr. Day and Judge Shannon of the district court that Section 95.23, supra, is in the nature of "a curative act with a limitation provision." In this view, the twenty year provision of Section 95.23, supra, does not begin to run until a cause of action accrues in favor of the party asserting the adverse claim against the recorded instrument. This view stems from the contention that if applied otherwise, the act would be unconstitutional for the reason that the twenty year period could run before the accrual of a right of action adverse to the recorded instrument. Those of us who sat at the knee of Professor Day in the University of Florida College of Law, regard his views on any subject, and particularly real property, with tremendous respect. We would not lightly lay aside the opinions and advice of one who has contributed so much to the development of the law and lawyers in Florida. We think it unnecessary, however, in this case to take issue with the analysis of the statute expressed in the opinion by Judge Shannon, except to conclude that in the instant case it was not applicable.
The property here involved was a homestead. The Florida Constitution, Article X, Section 4, F.S.A., and the Florida Statutes, Section 731.27, F.S.A., obviously recognize the homestead and the interests of the family in the title thereto as a very special kind of property right that enjoys the fullest measure of protection against improper encroachment and illegal alienation. The point that recurs is that Mrs. Fain could have proceeded to protect her interests during the running of the twenty year period from the date in 1930 when the deed was recorded. We think she could have done so by an appropriate proceeding in equity to establish the property as a homestead at the time of the 1930 transaction, as well as to adjudicate the effectiveness of the alienation that was attempted at that time. We have said that a deed to homestead between husband and wife, where there is a child or children living "is prima facie ineffective to convey legal title to such homestead, insofar as the vested interest of the children are concerned." Church v. Lee, 102 Fla. 478, 136 So. 242, 247. This Court had earlier committed itself to the proposition *862 that "the heirs' of the homestead owner, as well as the owner and his wife, if he has one, have an interest that can be `alienated' only as provided in the Constitution. If the requirements of the Constitution and the statutes are not complied with in `alienating' homestead real estate the attempt is a nullity as to the `heirs' of the homestead owner and also as to the husband and wife." Hutchinson v. Stone, 79 Fla. 157, 84 So. 151, 154.
In view of the decisions of this Court which have consistently been extended to protect the interest of the heirs of a homestead owner, we have the view that in the event that there is an attempted alienation which is illegal or otherwise ineffective against the heirs, then they may immediately enter a court of equity to establish their interest in the subject matter. By following this application of the rule, Section 95.23, supra, is saved against the constitutional impediment suggested by Professor Day and Judge Shannon and permits the application of the statute just as it was written by the Legislature.
What we have heretofore written deals with the interpretation of Section 95.23, supra. It remains for us to determine whether the decision of the Court of Appeal conflicts with prior decisions of this Court in Thompson v. Thompson, supra and Barnott v. Proctor, supra. We regret that we are not able to agree with the district court as to its asserted distinguishing characteristics which would differentiate the instant case from prior decisions of this Court. We are, therefore, compelled to conclude that there is a conflict of decision on the same point of law fatal to the decision of the district court here.
In Thompson v. Thompson, supra, a father conveyed the homestead to the mother thinking that in so doing he could avoid certain debts. This was in 1926. Twenty five years later the mother died, leaving a will by which she devised the land to one son of the couple. In 1953 the father and remaining children proceeded in equity to set aside the 1926 deed on the ground that it was an ineffective attempt to alienate the homestead. This Court, in no uncertain terms, applied Section 95.23, supra, to the rights of the father and the children and held that the deed to the deceased mother which had been of record for more than 20 years, was immune to attack. We think there is direct parallel between the rule of law which this Court announced in Thompson v. Thompson and the rule which should be applied in the instant case. There is, likewise, a substantial parallel between the rule of Barnott v. Proctor, supra, and the rule applicable here. However, it is not as pointed because of the intervention of what appeared to be the interest of a bona fide third party claimant in Barnott.
We invite attention to the holding of the chancellor as reflected by the opinion of the district court. He, apparently, took the view that when Stella Reed conveyed all of her interest in the property to the petitioner George Reed in 1955, she conveyed merely a life estate for the simple reason that in view of the chancellor she owned only a life estate. Inasmuch as this matter will have to be returned to the district court for the entry of a correct judgment, this fact should be taken into consideration in the further disposition of the rights of the petitioner George Reed.
Because of conflicts hereinabove pointed out, the decision of the district court is quashed and the cause is remanded to that court for the entry of a judgment consistent herewith.
It is so ordered.
TERRELL, THOMAS and O'CONNELL, JJ., concur.
ROBERTS, C.J., and HOBSON and DREW, JJ., dissent.
DREW, Justice (dissenting).
Section 95.23, Florida Statutes 1957, F.S.A., around which this case revolves was *863 enacted in 1925. So far as I have been able to discover, this Court has had occasion to consider this statute in seven reported cases while the District Courts of Appeal have considered it in two cases. I must say it is difficult to reconcile the holdings of the Court in all of these cases, and I fear that the opinion of the majority does little to clear up the situation.
As pointed out in the majority opinion, Professor Day has expressed the view in his article that the subject act is a "curative act with a limitation provision". Professor Day's article discusses in great detail the various decisions which this Court has written. It must be remembered that the article was prepared and published in 1956 prior to the time that the District Court of Appeal of the First District rendered its opinion in Foremost Properties, Inc. v. Gladman, Fla.App. 1958, 100 So.2d 669 and Garrett v. Oak Hall Club, Fla.App. 1959, 112 So.2d 603. These two opinions of the District Court, in my judgment, support the theory of Professor Day. Moreover, most of our cases refer to this act as a statute of limitations. This being so, I revert to the main contention of Professor Day that the existence of a cause of action is a prerequisite to the operation of a limitations act. As I construe the opinion of the majority, they apparently concede this to be correct when they state in summary that Mrs. Fain, the objecting daughter, could have instituted these proceedings to question the validity of the subject conveyance at any time during the twenty-year period. I think the majority are wrong in their conclusion in this respect because the head of the family was living during this period of time. This fact would preclude the daughter, in my opinion, from maintaining an action because, as pointed out by Professor Day, under the statutes of this state the lineal descendants who inherit an interest in a homestead are those in being at the death of the owner.[1] To put it another way, during the lifetime of the father (during which the twenty-year statute was running) the daughter had no interest which would entitle her to maintain any cause of action in the courts of this State. I assume it could be argued that the effect of the majority opinion is to hold that such a cause of action did in fact exist in the daughter. I don't believe this point is properly before us in these proceedings. Even if it were, I could not agree that the children of the head of a family, during the lifetime of the head of the family, could maintain an action in any court to contest the validity of a deed of the homestead premises. This is particularly true where, as here, the head of the family continued in possession.
There can be no doubt that the deed involved in this litigation was void. In the Blocker case[2] this Court held that this statute did not embrace a forged deed and, in the opinion, this Court drew no distinction between a forged deed and a void deed. The authorities cited by the Court in the case did not distinguish between void deeds and forged deeds. They seemed to deal with them in the same breath and applied the same rules.
In the opinion this writer prepared for the Court in the Moyer case,[3] the statement is admittedly made that the statute validates and renders unimpeachable a deed or will of record for twenty years except as to those who have asserted by competent record an adverse claim. This statement is obviously obiter because in that case this Court specifically held that the statute was not involved. What we held there was that the fact that the deed to Nutting had been recorded for twenty years did not, under the statute, invalidate his conveyance to the defendant and that the defendant's title was superior to the plaintiff's as the plaintiff took his deed with the *864 knowledge of the deed from Nutting to the defendant.
This indeed is an involved and highly important question. Some of the cases confuse rather than clarify the issues. In brief summary, I am of the view that the conclusions reached by Professor Day are correct and that this statute cannot operate against one until such party has a cause of action to attack the questioned deed.
I, therefore, respectfully dissent.
ROBERTS, C.J., and HOBSON, J., concur.

ON REHEARING
HOBSON, Justice.
After a lengthy and careful consideration of the controlling question in this case and the decisions which deal with it, we are convinced that no truer words were ever spoken than those appearing in Mr. Justice Drew's dissent. He states: "This indeed is an involved and highly important question. Some of the cases confuse rather than clarify the issues." (Italics supplied.)
We do not mean to be unduly critical of the initial majority opinion prepared by Mr. Justice THORNAL. He pursued the accepted course in following our decision in the case of Thompson v. Thompson, Fla. 1954, 70 So.2d 555, after correctly deciding that the decision of the District Court in the instant equitable action is directly in conflict on the same point of law with our decision in Thompson. However, the fact that this Court has jurisdiction to entertain and decide a case upon the theory of "conflict" does not mean that we cannot recede from our prior decision upon which such "conflict" is predicated if we, after a careful and thorough consideration of that decision, decide that it is unsound, ill-advised, unjust, illogical or inequitable. More anon upon the decision in the Thompson case.
The real question in this case is not: "When did the twenty year period set forth in Section 95.23 F.S. begin to run?" but rather: "Were the provisions of Section 95.23 F.S. intended to be applicable to a `void' deed, or are they, in any event, applicable in this equitable suit under the facts disclosed by the record herein?" We answer both segments of this bipartite query in the negative.
As has been stated by Mr. Justice Drew in his dissent to the original majority opinion, "* * * the deed involved in this litigation was void. In the Blocker case this Court held that this statute did not embrace a forged deed and, in the opinion, this Court drew no distinction between a forged deed and a void deed." We agree.
However, in the Blocker case[1] there appears to be an even more significant fact which is that this Court held a forged deed to be a void deed and upon this premise decided that Sections 4660 and 4661, C.G.L. (F.S. Section 95.23, F.S.A.) were inapplicable thereto. Our decision in Blocker makes crystal clear the fact that F.S. Section 95.23, F.S.A., does not apply to a void deed. Furthermore, in the opinion in that case we said we do not think it was the intention of the Legislature that Sections 4660 and 4661, C.G.L. (F.S. Section 95.23, F.S.A.) should be applicable to a forged (void) deed.
Eleven sessions of the Legislature have come and gone since such statement was made by this Court and the subject statute has not been amended to include forged or void deeds. Consequently, it is now reasonable to assume that this Court was correct in its expressed thought with reference to the legislative intent.
Homestead property is a special kind or species of property. It is so treated in our Constitution and in our statutes. The Legislature originally would have normally and specifically included homestead property *865 had it intended such type of property to be embraced by Section F.S. 95.23, F.S.A. We held in Church v. Lee[2] that Section 5670 C.G.L. (F.S. Section 689.11, F.S.A.) is not applicable to "homestead real estate". Moreover, the legislators, many of whom are lawyers, are presumed, as is everyone, to know the law. Consequently, had it been their intention to place homestead property within the purview of F.S. Section 95.23, F.S.A., they would have expressly done so, because it is well established that equity is not necessarily bound by a statute of limitations. The legislators might have intentionally omitted "homestead property" from F.S. Section 95.23, F.S.A., because they may have envisaged the probability of the statute being declared unconstitutional.
The voluntary deed from George V. Reed executed and delivered to his parents in the year 1930 was an ineffectual and futile attempt to create an estate by the entirety because the voluntary deed made to him by his parents was and is void  not merely voidable. It is not valid even as between the parties. In Hutchinson v. Stone, 79 Fla. 157, 84 So. 151, 154, we held that "The `heirs' of the homestead owner, as well as the owner and his wife, if he has one, have an interest [in the homestead property] that can be `alienated' only as provided in the Constitution. If the requirements of the Constitution and statutes are not complied with in `alienating' homestead real estate, the attempt is a nullity as to the `heirs' of the homestead owner and also as to the husband and wife." (Italics supplied.) See also Church v. Lee.[2]
Prior to the Church case and subsequent to Hutchinson, we said, in Rawlins v. Dade Lumber Co., 80 Fla. 398, 86 So. 334:
"Homestead rights inure to the widow and heirs of the owner of the homestead, who must be the head of a family residing in this state. It is for this reason that, when there are children or a child of the husband, a conveyance of homestead real estate to the wife by the husband alone is void under the Constitution, prescribing the method by which homestead real estate may be alienated." (Italics supplied.)
The entire transaction between the parents and their son was a nullity because it was violative of the constitutional inhibitions regarding the alienation of homestead property. Were this not so, it nevertheless without doubt is true insofar as the "inchoate"[3] interest in the homestead property of the "heir" (Mrs. Fain) is concerned. Such interest is guaranteed to her and protected by Sections 1, 2 and 4, Article X of the Florida Constitution, F.S.A. as such sections have been construed by the Supreme Court of this State. The artifice employed by the Reeds and their son was also ineffectual as to the "inchoate" interest of George as well as the interest of Stella Reed as the "widow" of the homestead owner. It matters not that neither George Reed nor his mother has ever complained of the conspiratorial, fraudulent and invalid (void) transaction in which each was particeps criminis.
It has always been my understanding that "once a homestead always a homestead" so long as the head of the family, with a child or children in esse, retain such status and continues to occupy the premises in conjunction with his wife or one or more members of his household. The only exception to the rule, of which we are cognizant, is that such property may, in a bona fide transaction based upon an "appropriate consideration",[4] be alienated as provided in and by our Constitution as the organic directives therein contained have been construed by this Court.
*866 The undertaking engaged in by the Reeds and their son George was nothing more nor less than an abortive effort to change the character of the subject property from "homestead" to "an estate by the entirety".
This cabal did not divest the homestead property of its distinquishing attribute. It was, at most, only an "ineffectual" endeavor to do so. Consequently, under the facts of this case, the subject property retained its homestead quality until the death of J.M. Reed. The "* * * attempted `alienation' merely left the title to the homestead substantially where it was before * * *".[2]
In Jackson v. Jackson[4] we held:
"In Florida, homestead real estate owned by a husband, who has a child or children living, cannot be conveyed by the husband to his wife, by the means of a deed of conveyance, without consideration, executed by the husband and wife to a third person, who, acting merely as a conduit or intermediary, without consideration, conveys or quitclaims the same homestead property to the wife. Norton v. Baya, 102 So. 361, 88 Fla. 1.
"The implied limitations contained in a Constitution are as much a part of the organic law and are as effective as those which are expressed."
The words "appropriate [or valuable] consideration" are not spelled out in Sections 1, 2 and 4, Article X of the Florida Constitution but according to our opinion in the Jackson case they constitute an "implied" limitation upon the alienation of homestead property. We have not receded from this pronouncement. This "implied" limitation when judicially declared became and remains "a part of the organic law". See State ex rel. Nuveen v. Greer, 88 Fla. 249, 102 So. 739, 37 A.L.R. 1298; Getzen v. Sumter County, 89 Fla. 45, 103 So. 104; State ex rel. McKay v. Keller, 140 Fla. 346, 191 So. 542.
It has been held, and we think with propriety, that "The judicial interpretation of constitutional provisions is so forcible that, where a new Constitution is adopted without change of the rule laid down by the courts, the construction is adopted by the new Constitution and becomes a part of it to the degree that it cannot be changed even by a statute expressly undertaking to do so." Lyle v. State, 80 Tex.Cr.R. 606, 193 S.W. 680. (Italics supplied.)
Although the reconveyance in Jackson was to the wife it nevertheless was, as in the instant case, an attempt to change the nature of homestead property in such manner as to destroy the constitutionally protected interests of an "heir" or "heirs". The principle of law declared in Jackson is equally applicable to the facts in this case.
F.S. Section 95.23, F.S.A., cannot make valid that which is void. According to this Court's opinion in Barnott v. Proctor, 128 Fla. 63, 174 So. 404, 406, "the statute does not purport" to do so.
In the Barnott case the statute was construed to act as a bar to the assertion of the invalidity of the critical deeds executed in 1892 because of the plaintiffs' acquiescent conduct and failure to assert their claim before the rights of an innocent third party intervened.
We are confident the conclusion reached in that case would have been the same had such a statute as F.S. § 95.23, F.S.A., never existed. The statute was used as a guide and invoked upon equitable principles, particularly the maxim to the effect that one who fails to speak when equity and good conscience require him to do so will not be heard when equity and good conscience demand that he remain silent.
Mr. Justice Brown in a logical dissent in Barnott expressed the opinion that the so-called innocent third party could not properly be so classified because he was "put on record notice as to the homestead character *867 of the property" which was to be conveyed to him by mortgage deed. This reasoning was later adopted by the Supreme Court in a strong opinion by Mr. Justice Thomas.[5] In that case the Court held without equivocation that the holder of an otherwise bona fide mortgage on homestead property could not be an innocent third party whose rights should be protected by virtue of the fact that the mortgage was an "invalid instrument". The facts in the Dunphe case established that: The fee simple title was at all times vested in Mrs. Dunphe; she had become a "free dealer" by court action before she alone executed the mortgage deed upon the homestead property; she was the head of the family which fact was, without doubt, unknown to the mortgagee at the time of the execution of the mortgage and was not disclosed until he brought the foreclosure proceeding. Even so, we decided that the mortgagee did not occupy the position of an innocent third party, although he had actually loaned money to Mrs. Dunphe, for he was on record notice that the wife was a free dealer and owned the property; and he could have ascertained the homestead character of the property as well as the fact that Mrs. Dunphe was the head of the family had he, as was his duty, investigated the rights of those persons (husband, wife and her children) in possession of the property upon which the mortgage was intended to be and constitute a lien.
The mortgage was held to be an "invalid[6] instrument" because it was not executed as required, in and by Article X of our Constitution, for the alienation of homestead property. For the reason that the mortgage was invalid and void, if you please, this Court permitted Mrs. Dunphe to defeat the mortgage foreclosure regardless of the fact that such decision in effect allowed her to take advantage of her own wrong.
The Dunphe case demonstrates how difficult it is to be an innocent third party when dealing with homestead property. The only instances which we can envisage at the moment, wherein one can attain the status of an innocent third party in transactions involving homestead property owned by the head of a family with a child or children then living, would be: First  acceptance of a deed or mortgage predicated upon a valuable consideration and executed by both husband and wife; second, by acquisition of a valid tax deed. We have uniformly held that a tax deed creates a new and independent title which is paramount to and "entirely disconnected with" the former title. Hecht v. Wilson, 107 Fla. 421, 145 So. 250, denying rehearing and modifying 107 Fla. 421, 144 So. 886; Daniell v. Sherrill, Fla., 1950, 48 So.2d 736, 23 A.L.R.2d 1410.
Although F.S. Section 95.23, F.S.A., was not involved in Dunphe, the decision does support the postulate "once a homestead, always a homestead" subject only to the limitations previously set forth herein.
The statute under consideration, if applicable in any equitable action, is simply and solely a legislative enactment fixing a period of time which, after its expiration, operates as a bar or estoppel against anyone who would assert an adverse claim to a deed or will, because he failed to speak when equity and good conscience required him to act. It fixes a period of time beyond which laches as a matter of statutory law operates as a bar. In other words, the statute makes the simple lapse of time the criterion upon which laches is predicated. "But it is not mere delay that constitutes laches." Marshall v. C.S. Young Construction Co., 94 Fla. 11, 113 So. 565, 568, 55 A.L.R. 662. The doctrine of laches is never invoked or applied as a bar by virtue of nothing more than delay. Anderson *868 v. Northrop et al., 30 Fla. 612, 12 So. 318; State ex rel. Shein v. Attwood, Fla., 1953, 64 So.2d 917, 919. An ad interim third party must act to his detriment in reliance upon such neglect or the delay must operate "to the disadvantage of the other party" or some other impelling equitable factor must intervene. Seaboard All Florida Ry. Co. et al. v. Underhill et al., 105 Fla. 409, 141 So. 306, 307. Laches, even when measured by a statutory yardstick, does not necessarily bar the assertion of rights in a court of equity which have been the subject of attempted invasion or destruction by action which is null and void, at least not until and unless the rights of innocent third parties intervene or one (or more) of the transgressors has clearly demonstrated that the delay has prejudiced his alleged rights.
It is very important to remember that no interests of innocent third parties are involved in this case. Consequently, Mrs. Fain had the right to institute, and has the privilege of maintaining, this action in a court of equity to secure the relief to which she is entitled as against the one living person who was a party to the not only fraudulent but void transaction designed to destroy her interest as an "heir" in and to the homestead property belonging to their common and immediate progenitor. The so-called equitable maxim that "equity follows the law" is invoked only in cases wherein the equities are equal.[7] This is not such a case.
We have hereinbefore employed the adjective "inchoate" in connection with Mrs. Fain's interest in the subject property. We did so because we believe it more nearly describes the type of "interest" in homestead property which is granted to an "heir" by the Florida Constitution than any adjective we have seen used in our opinions dealing with such subject. Bouvier's Law Dictionary, Vol. I, Third Revision, page 1527, defines "inchoate" to mean "That which is not yet completed or finished."
In Long v. Long, 99 Ohio 330, 124 N.E. 161, 162, 5 A.L.R. 1343, it is stated:
"Inchoate right is * * * `that which is not yet completed or finished' * * *. It is, in short, merely the beginning of a right that does not ripen unless the one possessing such right in the property of another shall survive."
Commissioner Andrews, in the case of Church v. Lee,[2] inadvertently employed the descriptive adjective "vested" in referring to the inchoate interest of an "heir" in homestead property. Clearly such an interest is not "vested", legally speaking, until the death of the head of the family. Prior to that inevitable event and during the lifetime of an "heir" such "interest", although actual as distinguished from imaginary, is not a "vested interest". It is incipient, dependent and contingent, yet genuine. It is created and protected by our Constitution. It does not need to be established by a court decree except for the possible purpose of notice to one who might otherwise, in some manner, acquire as an innocent third party a partial, or the whole, interest in the fee simple title to homestead property.
Perhaps it is trite at this juncture for us to state, but we are impelled to do so, that we have misgivings concerning the statement in the original majority opinion to the effect that Mrs. Fain could have "immediately" [the record does not show whether she was sui juris in 1930] "entered a court of equity to establish [her] interest in the subject matter". (Italics supplied.) However, if such observation were unquestionable we could not agree that, under the facts of this case, she was barred from such action after the passage of the statutorily prescribed period of twenty years. Moreover, although the construction of F.S. *869 Section 95.23, F.S.A., given said statute in the original majority opinion saves it "against the constitutional impediment suggested by Professor Day and Judge Shannon" it, in our judgment, renders said statute unconstitutional for a reason other than the one recited by these erudite expositors of the law. This is so because the view set forth in our original opinion that F.S. Section 95.23, F.S.A., is a bar or estoppel causes said statute to operate indirectly in a manner in which it does not "purport" to act directly, i.e., makes valid, by virtue of delay and mere passage of time, a deed which was and is void. We can see no difference between a statute which might "purport" directly to make valid a deed which was void at its inception, and one which bars a person from asserting the validity of such instrument after sheer expiration of a given period of time with no change in conditions or circumstances. The end result is the same. In either event, an heir's constitutionally created interest in homestead property is destroyed under the impact of the statute, by the mere existence of a void deed.
We proceed now to a discussion of our opinion and decision in Thompson v. Thompson, Fla., 1954, 70 So.2d 555. We have examined the file lodged in the Clerk's office and have made a careful analysis of the opinion in Thompson. Although the contention was made by appellants that the critical deed was void, we are now convinced that we gave, at most, only superficial consideration to such point. The opinion fails even to discuss it and disposes of it only by necessary implication.
It is stated in said opinion that the bill of complaint contained no allegations of "fraud" while in truth and in fact it was bottomed upon an alleged fraudulent and invalid transaction. The bill clearly charges that the voluntary deed from the husband to the wife was executed and delivered without anything of value passing from the latter to the former. Admittedly this trick was devised for the purpose of vesting the title in Mrs. Thompson in a futile effort to "divert his (Thompson Sr.'s) creditors". The bootless scheme was conceived in iniquity, reeked of fraud and was invalid. Thompson, Sr. might have been estopped in a court of equity from taking advantage of his own wrong but our opinion fails to state that our decision was based upon such theory. F.S. Section 95.23, F.S.A., was held applicable and that was the end of the line.
Actually we relied in Thompson upon our decision in Barnott v. Proctor, supra, which concedely involved the rights of an innocent third party. It, therefore, was not dispositive of the controlling, although unrecognized, query in the Thompson case. Except for the lightly considered opinion in Thompson, this Court has never held F.S. Section 95.23, F.S.A., to be applicable, so far as we have been able to discover, to a void deed or in any action in equity containing a factual picture similar to the one limned by the record herein.
In our opinion, the simple, correct and direct method of clarifying our conflicting decisions upon the vital and controlling question posed in this case is to, and we do herein and hereby, repudiate our opinion and decision in Thompson and hold in line with prior decisions of this Court that the critical deed is void. It is unthinkable, in any event, that a court of equity would permit George Reed to take advantage of his own wrong. How can it be said that Mrs. Fain cannot maintain this equitable action even if it be held that the putative deed[8] to George Reed was not absolutely void ab initio, in the face of the fact that no rights of innocent third persons are involved? Actually, the only real interested parties litigant are Mrs. Fain and George.
*870 It should not be held that this action in equity by Mrs. Fain is barred by estoppel, laches or a statute of limitation which is basically predicated upon either rule. This suit in equity is not one in which equity and law have concurrent jurisdiction. The statute is not by express language made applicable to deeds, mortgages and wills relating to homestead property. The basis of the instant action was not originally a demand cognizable in, and enforceable only by, a court of law. George Reed, according to the Chancellor, failed to show, although he alleged, that intervening equities favored his position or that he was prejudiced by unreasonable delay.[9] A statute of limitation may, of course, be employed as a guide in an equity action in connection with a careful consideration of all of the existing equities.
It is well established that the recordation of a void deed does not constitute constructive notice of "anything". Wright v. Blocker.[1] See also Poladian v. Johnson, Fla., 1955, 85 So.2d 140. It is a mere brutum fulmen "Signifying nothing."[10]
Moreover, it has been held by this Court (Anderson v. Northrop, 30 Fla. 612, 12 So. 318) under facts analogous to those of the instant case that a fraudulent deed (voidable only as distinguished from void ab initio) although recorded, did not constitute constructive notice to those against whom the fraud was perpetrated. More accurately speaking we held the failure to examine the records as well as the delay in bringing suit to set aside such recorded deed was excusable and that laches could not be employed as a defense.
We paraphrase the language of our opinion in Anderson. "The possession by [Mr. and Mrs. Reed] of the [homestead] property, being entirely consistent with, and permitted by, the title by which [Mrs. Fain] could claim only at [J.M. Reed's] death, was of itself calculated to deter [Mrs. Fain] from inquiring for any other title, not consistent therewith, and furnishes a natural, and, as we think, sufficient, excuse for [Mrs. Fain's] failure to examine the records. And in this connection it may be said that the continued absence from the state of [Mrs. Fain] and [her] consequent want of access to the records, and to the knowledge of the transactions that might have been general in the immediate community, [general knowledge is at least doubtful in this case] is a circumstance that should weigh in favor of [her] want of knowledge on the subject."
"Suppose [she] had applied earlier for the relief now sought. What would have been the result of the litigation? Clearly, * * * no litigation over [the homestead property] instituted prior to the death of [both J.M. and Stella Reed] could have resulted in dispossessing [either parent] of [the homestead property] * * *, nor could it have resulted in an immediate enjoyment of any of such property by [Mrs. Fain] until after the termination of [the] natural life [of each parent]." This is so because J.M. and Stella Reed had the right of possession of the homestead property until the death of J.M. Reed, and Stella Reed, as widow, had such right thereafter by virtue of the life estate which vested in her by operation of law.
Mrs. Fain did not, according to the record before us, have actual notice of the critical deed executed in the year 1930 until 1955, or perhaps 1951. She testified positively that she first had actual knowledge concerning the 1930 transaction between George and their parents in 1955. Later on she gave testimony which indicated she might have learned about the 1930 deed in *871 1951[11] had she inquired into the reason for George's insistence that she execute a quitclaim deed to him. However, equity should not require a sibling, positioned as was Mrs. Fain, to be ever vigilant and alert to discover and prevent chicanery on the part of other members of her family designed to deprive her of her sacred birthright.
Assuming that 1951[12] was the year in which Mrs. Fain learned about the attempt to destroy her constitutionally created interest in the homestead property, she has not been guilty, under the facts disclosed by the record, of unreasonable or inexcusable delay which resulted in prejudice to any (fancied) rights of her brother George. No normal child would even question or investigate the propriety or legality of his parents' action much less bring a suit against them, at any time, especially during the evening tide of life, and take the chance of disrupting or destroying the cordial parent and child relationship which should ever remain inviolate. The biblical admonition to "Honour thy father and thy mother"[13] would be sufficient justification for the adoption of a Fabian policy.
Summarizing, we hold that F.S. Section 95.23, F.S.A., is not applicable in this case because, first, the critical deed is void, second, if not void ab initio, it was and is void as to Mrs. Fain's "inchoate" interest in the homestead which became "vested" upon the death of her father; third, the Legislature did not intend F.S. Section 95.23, F.S.A., to be applicable to deeds or wills conveying or devising "homestead property"; fourth, F.S. Section 95.23, F.S.A., is unconstitutional if it be construed in such manner as to breathe life into an instrument made and executed in contravention of constitutional inhibitions.
We expressly recede from our decision in Thompson v. Thompson, Fla., 1954, 70 So.2d 555. We also repudiate any statement in our opinion in the later case of Moyer v. Clark, et al. Fla., 1954, 72 So.2d 905, which might be considered as a reaffirmance of our decision in Thompson.
The decision of the District Court of Appeal, Second District, is hereby
Affirmed.
ROBERTS, C.J., and THOMAS and DREW, JJ., concur.
TERRELL, THORNAL and O'CONNELL, JJ., dissent and adhere to former opinion and judgment filed November 1, 1961.
NOTES
[1] Section 731.27, Florida Statutes 1957, F.S.A.
[2] Wright v. Blocker, Fla. 1940, 144 Fla. 428, 198 So. 88.
[3] Moyer v. Clark, Fla. 1954, 72 So.2d 905.
[1] Wright v. Blocker, 144 Fla. 428, 198 So. 88.
[2] Church v. Lee, 102 Fla. 478, 136 So. 242, 247.
[3] The use of this descriptive adjective is hereinafter explained.
[4] Jackson v. Jackson, 90 Fla. 563, 107 So 255.
[5] Bigelow v. Dunphe, 143 Fla. 603, 197 So. 328. See also 144 Fla. 330, 198 So. 13.
[6] Every dictionary and reference book to which we have access gives "void", "null", "of no legal force", "null and void" as synonyms for "invalid" when such word is used in its legal sense.
[7] For the author's view on this subject see his concurring opinion in Barbash v. Barbash, Fla. 1952, 58 So.2d 168, 171.
[8] We hold, however, as aforestated in line with our opinions and decisions in Rawlins v. Dade Lumber Co., 80 Fla. 398, 86 So. 334; Bigelow v. Dunphe, 143 Fla. 603, 197 So. 328, that said deed was and is void for all purposes.
[9] "Effect of Statute of Limitations in Equity Suits". See the excellent dissertation upon the subject by George Earl Brown, published in the U. of F. Law Review, Vol. 3 (1950), page 351.
[10] Macbeth, Act V, Sc. 5.
[11] Mrs. Fain came to Florida from her home in Texas in 1951 because of her father's serious illness.
[12] In 1951 Mr. and Mrs. J.M. Reed were well along in years and Mr. Reed was quite ill both physically and mentally.
[13] Exodus XX, 12.