224 So.2d 743 (1969)
E.E. MARSHALL, As Administrator De Bonis Non of the Estate of Mathew A. Marshall, Deceased, Appellant,
v.
HOLLYWOOD, INC., a Florida Corporation, et al., Appellees.
No. 2245.
District Court of Appeal of Florida. Fourth District.
June 30, 1969.
*744 Garland M. Budd and Lewis Moore, Miami, for appellant.
Sherwood Spencer of Ellis, Spencer & Butler and Beckerman & Beckerman, Hollywood, for appellees Hollywood, Inc., Sherwood Investment Co., Frances E. Kane and Joanna Kane, his wife, and Alvin Kohn, a single man.
Donald J. Lunny, of Sutton, James, Bielejeski & Lunny, Fort Lauderdale, for appellees Joseph DiBari, J. Petruzelli and Vera Petruzelli, his wife, G. DeChiaro and Mary DeChiaro, his wife, Mildred Garber and H.N. Garber, Lester Lehn, Simon Garzina and Amelia Garzina, Raymond Mohr and Alberta Mohr, Ralph E. Luebbers and Viola L. Luebbers, Robert G. Sabella and Lorraine T. Sabella.
A.C. Paoli of Paoli & Paoli, Hollywood, for appellees W.W. Bradley and Gaynelle Bradley Leggett, James Damoto and Mrs. James Damoto, A.J. DeStefan and Wilhelmina DeStefan, his wife, Walter Farrar, and Mrs. Walter Farrar, his wife, E.H. Foster and Irma Foster, his wife, C. Napoli and Theresa Napoli, his wife, Robert M. McKee and Ruth M. Amadon, sole heirs at law of F.B. McKee and Mrs. F.B. McKee, his wife.
Herbert L. Nadeau, of Shutts & Bowen, Miami, for appellee W. Douglas Hall.
Leonard Romanik, of Landefeld & Romanik, Hollywood, for appellees F.C. Brodbeck and Bernice Brodbeck, his wife, M. Constantinou and Anna Constantinou, his wife, H.A. Friedman and Lena L. Friedman, his wife, G.H. Hamilton and Mrs. G.H. Hamilton, his wife, J. Houting and Mildred Houting, his wife, Addie G. Izzo, Frank R. Wheaton and Helen M. Wheaton, his wife, Arthur W. Kellner and Charlotte M. Kellner, his wife, C.H. Landefeld, Jr., Dorothy D. Landefeld, J.J. McDevitt and Lillian M. McDevitt, his wife, E. Mabelle Otten, Robert Pentland, Jr., and Mrs. Robert Pentland, Jr., his wife, Jack Siegel and Mrs. Jack Siegel, his wife, Albert J. Tarrson and Mrs. Albert J. Tarrson, his wife, L. Walker and Alberta Walker, his wife.
William R. Dawes, of Dawes & Lummus, Miami, for appellee Grace Woods Asbury, a widow.
William F. Leonard, of Coleman, Leonard Morrison & Riddle, Fort Lauderdale, for appellees Mary Borduk, E. Cruz and Lidia Cruz, his wife, Joseph T. McHale and Catherine McHale, his wife, Ernest H. Wood and Carolyn M. Wood, his wife, and Eleanor Herboth.
*745 Richard H. Cobourn, Hollywood, for appellees S.L. Devier and Fredericka Devier.
Leon A. Epstein, Miami Beach, for appellees Edward N. Birk and LaSalle Nat. Bank, as co-executors of Estate of William J. Birk, and Lillian Birk.
Edmund S. Pendzisz, Miami, for appellees Luigi DeMaio and Mrs. Luigi DeMaio, his wife.
Charles E. Booth, of Booth & Booth, Daytona Beach, for appellee Helena Tennant.
Elliott B. Barnett and Michael H. Gora, of Ruden, Barnett, McClosky & Schuster, Fort Lauderdale, for appellees Margaret T. Hynes and her successors in interest including Margaret M. Maguire, Edward J. Hynes and Walter F. Hynes, John Darco and Annette Darco, his wife.
E.T. Hunter, Hollywood, for appellee City of Hollywood.
Ronald P. Anselmo, of Fleming, O'Bryan & Fleming, Fort Lauderdale, for appellees Damaris H. Carney, Marjorie H. Bosley and Virginia Ruff.
John H. Lewis, Hollywood, for appellee Estate of Susan D. Kater.
Robert C. Scott, of Cabot, Scott, Wenkstern & Casteel, Fort Lauderdale, for appellees M.N. Diener and Rae B. Diener, his wife, Joseph Gassib and Marion Gassib, his wife, Thomas Devanis and Ghidotti Devanis, his wife, Ted Devanis, Jr., a single man, Joseph T. McHale and Mrs. Joseph T. McHale, his wife.
Francis K. Buckley, of Buckley & Bland, Fort Lauderdale, for appellees Helen Anna O'Toole and Carol O'Toole, Catherine Benci, R. Popp, also known as Russell LeRoy Popp, Catherine Popp, Gerald B. Bauman, as conservator of the Estate of Helen S. Leith, Incompetent, Gertrude K. Johnson and Emma Anderson; Catholic Society of Religious and Literary Education.
Raymond E. Thompson, Hollywood, for appellees Raymond A. Wilcox, also known as R.A. Wilcox, and Katinka Ozee, as co-executors of the Estate of Ella Jo Stollberg Wilcox, Deceased, R.A. Wilcox, also known as Raymond A. Wilcox, a single man, individually, Katinka Ozee, formerly Katinka Stollberg, individually, J.V. Smith and Dovie Smith, his wife, and J.L. Smith and Isobel Smith, his wife.
Robert E. Dubow, of Walden & Dubow, Dania, for appellees Mendel R. Harris and Malvina Babes.
Paul Game, Tampa, Parks M. Carmichael, Gainesville, and David P. Catsman, Miami, for The Florida Bar, amicus curiae.
REED, Judge.
The appellant in this case, E.E. Marshall, as administrator of the estate of Mathew A. Marshall, deceased, has appealed from a final judgment of the Circuit Court in and for Broward County, Florida, dismissing with prejudice his second amended complaint. Appellant was the plaintiff in the trial court.
E.E. Marshall in his capacity as administrator of the estate of Mathew A. Marshall, deceased, filed his initial complaint in this cause on 13 July 1967. The complaint joined a multitude of defendants and sought relief relating to certain real property in Broward County, Florida, in which the defendants claim to have interests adverse to that of the plaintiff. Ultimately the second amended complaint was filed on 5 April 1968. Upon motion, this complaint was dismissed by a final judgment which dismissed the cause with prejudice. It is from the final judgment of dismissal that the present appeal has been taken.
The following statement of facts is taken from the allegations in the second amended complaint. In 1913 the Atlantic Beach Company, a Florida corporation, acquired title to the real property involved in the suit. Mathew A. Marshall was one of the organizers of that corporation. At the time of his *746 death on 31 December 1923 he owned 334 shares of its capital stock. He was then the president of the corporation and a director. The only other director and officer was Carl P. Weidling, the secretary of the corporation. Mr. Weidling owned the remaining 166 shares of stock in the corporation. No other stock was authorized or outstanding at the time of Mathew A. Marshall's death. Carl P. Weidling died in 1963.
On or about 1 February 1924 Louise L. Marshall, the widow and sole heir of Mathew A. Marshall, deceased, left Florida. At that time she had no knowledge that her deceased husband had owned stock in the Atlantic Beach Company at the time of his death.
Letters of administration were issued by the county judge for Dade County, Florida, to Louise L. Marshall dated 5 February 1924. These were issued pursuant to an application for letters bearing the forged signature of Louise L. Marshall. The application for letters made no reference to the stock in Atlantic Beach Company.
On 13 February 1924 a paper entitled "Minutes Of A Meeting Of The Stockholders Of Atlantic Beach Company" was signed and sworn to by Frank M. Terry. This paper purported to be minutes of a meeting on 5 February 1924 of the stockholders of Atlantic Beach Company at which all of the outstanding shares (500) were represented in person or by proxy. The minutes indicate that Frank M. Terry held a number of the shares individually and a proxy for a majority of the shares. One S. Grover Morrow was indicated as holding a proxy for four shares. Terry signed the minutes falsely pretending to be president of the corporation. These minutes were recorded in Deed Book 28 at page 223, public records of Broward County, Florida, on 13 February 1924. The minutes reflect a resolution of the stockholders authorizing the conveyance of all of the assets of the corporation to the stockholders thereof.
On 6 February 1924 Frank M. Terry executed a deed in the name of Atlantic Beach Company as president. The deed purported to convey all of Atlantic Beach Company's property to Frank M. Terry and the other individuals who purported to be  but were not  owners of all of the stock in the corporation. This deed was recorded on 15 February 1924 in the public records of Broward County, Florida. The deed is alleged to have been "falsely made and forged by Frank M. Terry. * * *"
On 14 February 1924 Frank M. Terry and the other grantees under the deed from Atlantic Beach Company executed a deed to Hollywood Realty Company, a Florida corporation. This deed was recorded in the public records of Broward County, Florida, on 11 April 1924. This deed was alleged to be false, spurious fraudulent, and forged.
On 6 August 1924 a deed was executed by Hollywood Realty Company to Homeseekers Realty Company, a corporation, and recorded in the public records of Broward County, Florida, on 22 August 1924. This deed was also alleged to be false, spurious and forged.
On 15 February 1924 the Circuit Court for Broward County, Florida, entered a decree dissolving the Atlantic Beach Company. This decree was based on the affidavit purporting to be signed by an attorney representing all stockholders of Atlantic Beach Company and falsely representing that he was authorized to seek the dissolution of the Atlantic Beach Company. The affidavit was false and the name of the attorney was forged thereon.
The foregoing transactions were part of a scheme to perpetrate a fraud on the estate of Mathew A. Marshall.
On 25 April 1929 The Highway Construction Company of Ohio, Inc., obtained a judgment against Homeseekers Realty Company. Following a levy and a sheriff's sale, a sheriff's deed to The Highway Construction Company was recorded on *747 30 December 1930. The deed purports to convey substantially all of the real property involved in this litigation.
On 21 February 1931 a deed from The Highway Construction Company of Ohio, Inc., to the defendant, Hollywood, Inc., was placed of record in the public records of Broward County, Florida.
Diagrammed, the chain of title to the real property involved in this lawsuit, insofar as it is relevant to the issues here involved, looks like this:

There were never any stockholders of the Atlantic Beach Company except Mathew A. Marshall and Carl P. Weidling. The Atlantic Beach Company was never legally dissolved until 14 September 1936 when it was dissolved by a proclamation of the governor for failure to pay capital stock tax.
Defendant Hollywood, Inc. and all other defendants knew the deed to Terry et al., to Hollywood Realty Company, and to Homeseekers Realty Company, was null and void.
The sheriff's deed to The Highway Construction Company of Ohio, Inc., was allegedly void because the judgment debtor (Homeseekers Realty Company) did not own title to the property. The deed is also void because the judgment on which the deed was based was, for various reasons, allegedly void.
The defendants other than Hollywood, Inc., claim interests under recorded instruments purporting to create the same from Homeseekers Realty Company. Hollywood, Inc., of course, claims under the recorded *748 deed from The Highway Construction Company of Ohio, Inc.
Louise L. Marshall died in December 1945 without ever having learned of her husband's interest in the Atlantic Beach Company. The plaintiff, E.E. Marshall, a brother of the deceased, Mathew A. Marshall, did not discover any of the facts alleged in the second amended complaint until 1 November 1966.
The land involved in this litigation is wild, unimproved, and not in the possession of any of the defendants.
The second amended complaint demands a decree establishing the interest of the plaintiff in the aforesaid lands of the Atlantic Beach Company, a confirmation of the ownership of the stock by the plaintiff, as administrator of the estate of Mathew A. Marshall, deceased, and the appointment of a trustee for Atlantic Beach Company to convey the legal title to the real property to the heirs of Mathew A. Marshall.
The order which dismissed the second amended complaint stated that it failed to state a cause of action on the ground that the plaintiff's alleged claim affirmatively appeared to be barred by the Marketable Title Act, Section 712, F.S. 1967, F.S.A. The issue which has been presented by the parties to this appeal by briefs and oral argument is whether or not the Marketable Title Act applies to the claim of title asserted by the plaintiff in the second amended complaint and extinguishes the same.
The plaintiff, as administrator of the estate of Mathew A. Marshall, deceased, claims to own two-thirds of the stock of the Atlantic Beach Company in his capacity as administrator. As the owner of two-thirds of the stock in the Atlantic Beach Company, the plaintiff claims equitable title to two-thirds of the real property owned by the corporation at the time it was dissolved and that he and the other heirs of Mathew A. Marshall are entitled to the legal and equitable title to the said real property. See Trueman Fertilizer Co. v. Allison, Fla. 1955, 81 So.2d 734.
The plaintiff's theory is that Atlantic Beach Company, at the time it was dissolved, still owned the real property in question because the purported deed executed in the name of that corporation by Terry to himself and others was void as a forgery. While there is some doubt as to whether or not the deed executed by Frank M. Terry pretending to be president of the Atlantic Beach Company may be classified as a forgery under the law of Florida, Green v. State, Fla. 1954, 76 So.2d 645, for the purposes of evaluating the second amended complaint, we will accept the plaintiff's characterization of the deed as a forgery and, as such, void. We think the plaintiff's conclusion that the deed was void under the facts alleged in the complaint is inescapable.
The Florida Marketable Title Act, Section 712.01, F.S. 1967, F.S.A., was enacted in 1963 and became effective September 1, 1963. It is undoubtedly the most important piece of legislation dealing with real property titles enacted in the State of Florida in many years. We will attempt to determine the legislative intent based upon the language used, the subject matter of the act and the purpose of the act. Realty Bond & Share Co. v. Englar, 1932, 104 Fla. 329, 143 So. 152.
The purpose of the act is to simplify and facilitate land transactions by allowing persons interested therein to rely on a record title. Section 712.10, F.S. 1967, F.S.A. The purpose of the act is accomplished basically by the provisions of Sections 712.02 and 712.04, F.S. 1967, F.S.A. Section 712.02 reads as follows:
"Any person having the legal capacity to own land in this state, who, alone or together with his predecessors in title, has been vested with any estate in land of record for thirty years or more, shall have a marketable record title to such estate in said land, which shall be free and clear of all claims except the matters set forth as exceptions to marketability in § 712.03. A person shall have a marketable *749 record title when the public records disclosed a title transaction affecting the title to the land which has been of record for not less than thirty years purporting to create such estate either in:
"(1) The person claiming such estate; or
"(2) Some other person from whom, by one or more title transactions, such estate has passed to the person claiming such estate, with nothing appearing of record, in either case, purporting to divest such claimant of the estate claimed."
The word "affecting" as it is used in the second sentence of Section 712.02 in the clause "affecting the title to the land" does not carry the narrow meaning of "changing or altering". The word is used in the broader sense meaning "concerning" or "producing an effect upon". In this broad sense, even a void instrument of record "affects" land titles by casting a cloud or a doubt thereon. Clements v. Henderson, 1915, 70 Fla. 260, 70 So. 439; Brown v. Solary, 1896, 37 Fla. 102, 19 So. 161.
All parts of an act should be read together in an effort to achieve a consistent whole. Ideal Farms Drainage District v. Certain Lands, 1944, 154 Fla. 554, 19 So.2d 234. The interpretation which we give the word "affecting" as used in Section 712.02 attributes to it a meaning consistent with the sense in which the same word is used in Section 712.01(3) in the definition of a "title transaction". "Title transaction" is defined as any recorded instrument or court proceeding which affects title to any estate or interest in land. If the word "affects" in the definition of a title transaction is interpreted narrowly to mean a recorded instrument which actually transfers or modifies an estate or interest in land, this would exclude from the definition of a title transaction a recorded instrument which "purported" to transfer or modify an estate or interest in land, but which actually did not do so because of some defect or impediment. Such an interpretation would create an inconsistency within the definition of the term "root of title" because it is defined in Section 712.01(2) in terms of a title transaction which purports to create or transfer an estate.
The first sentence of Section 712.02 states, "Any person * * * who * * * has been vested with any estate in land of record for thirty years or more, shall have a marketable record title to such estate in said land, which shall be free and clear of all claims except the matters set forth as exceptions to marketability in § 712.03." (Emphasis added.) The plaintiff argues that the use of the word "vested" in the first sentence of Section 712.02 indicates a legislative intent to apply the operative provisions of the act only to and in favor of a person who is in fact vested with some estate in land as distinguished from one who has an apparent estate in land. The plaintiff contends that the defendants never were vested with any estate in land because their predecessors in title had no estate. The defendants, therefore, are not entitled to the benefits of the act, and the act is not operative to bar the claim of the plaintiff.
We disagree with this construction placed upon the first sentence of Section 712.02 by the plaintiff. It ignores the total language of the sentence and particularly the words "of record" used therein. Furthermore, since the purpose of the act is to allow persons to rely on the record title to real property, it would be inconsistent to construe the words "vested * * * of record" in that sentence in such a way as to require an inquiry behind the record. The plaintiff's construction would render the first sentence of Section 712.02 inconsistent with the more explicit definition of "marketable record title" which is contained in the second sentence of Section 712.02. In the second sentence, a marketable record title is defined as a title which is purportedly created by recorded instruments or court proceedings without reference to *750 that which might be disclosed by facts outside the record title. We conclude, therefore, that Section 712.02 declares the existence of a marketable record title when a person is shown by the record to have been vested with any estate of land for thirty years or more. In our opinion the application of Section 712.02 is not conditioned upon an actual vesting of some estate or interest in a person claiming the benefit of the act.
Prior to the passage of the Marketable Title Act, the broadest statute purporting to cure titles to real property was sections 1 and 2, Chapter 10171, Laws 1925. These sections were codified as subsections (1) and (2) of Section 95.23, Florida Statutes, F.S.A. and read as follows:
"(1) After the lapse of twenty years from the record of any deed or the probate of any will purporting to convey lands no person shall assert any claim to said lands as against the claimants under such deed or will, or their successors in title.
"(2) After the lapse of twenty years all such deeds or wills shall be deemed valid and effectual for conveying the lands therein described, as against all persons who have not asserted by competent record title an adverse claim."
In Wright v. Blocker, 1940, 144 Fla. 428, 198 So. 88, Section 95.23, F.S.A., was held not to apply to a deed that was void by reason of a forgery of the grantor's name. In Reed v. Fain, Fla. 1961, 145 So.2d 858, the Florida Supreme Court on rehearing held that § 95.23, F.S.A., could not be applied to validate a deed executed in violation of the homestead provisions of Article X of the Florida Constitution of 1885. Based upon these decisions, the plaintiff here argues that the Marketable Title Act does not apply to a void deed to eliminate claims of title depending upon transactions antecedent to the void deed. We appreciate the logic of the plaintiff's argument; however, the Marketable Title Act differs in many respects from Section 95.23 which was before the Florida Supreme Court in Wright v. Blocker and Reed v. Fain, supra. Section 95.23 has no express exceptions. The Marketable Title Act does. The specific enumeration of exceptions to the act in Section 712.03 and the specific provision in Section 712.05 for the protection of valid claims indicates a legislative intent to exclude no other claims from extinction by the operation of Sections 712.02 and 712.04. Dobbs v. Sea Isle Hotel, Fla. 1952, 56 So.2d 341; Biddle v. State Beverage Department, Fla.App. 1966, 187 So.2d 65. For this reason, we do not believe that the rationale in Wright v. Blocker and Reed v. Fain, supra is pertinent to the Marketable Title Act and hold that under the circumstances depicted by the second amended complaint, the act may be applied to validate a record title even though it may be based on a void deed. Compare Wilson v. Kelley, Case No. 68-421, decided by the Florida Second District Court of Appeal on 14 May 1969 wherein it held that the Marketable Title Act may be applied to a wild deed.
Section 712.02 correlates with Section 712.04. The first sentence of Section 712.04 states that "* * * such marketable record title shall be free and clear of all estates, interest * * *." The phase "such marketable record title" refers back to the marketable record title declared and defined in Section 712.02. The second sentence of Section 712.04 amplifies upon the claims which are rendered null and void by the marketable record title.
The allegations in the second amended complaint and the exhibits thereto affirmatively reveal "title transactions" which have been of record for not less than thirty years which purport to create a fee simple estate in the lands involved in this suit in the defendant Hollywood, Inc. and the predecessors in title of the other defendants. One such title transaction is the deed from Hollywood Realty Company to the Homeseekers Realty Company recorded on 22 August 1924. The other title transaction is the deed from The Highway Construction Company of Ohio, Inc., to defendant Hollywood, *751 Inc., recorded 21 February 1931. The complaint affirmatively alleges that all of the defendants other than Hollywood, Inc., claim as successors in title under the deed to Homeseekers Realty Company. That nothing appears of record purporting to divest the defendants of their record title to the property is a necessary implication from the affirmative allegation that the defendants have present claims to the land in question. The defendants, therefore, appear from the allegations of the complaint to have a marketable record title as defined in Section 712.02.
Under Section 712.04 this title is cleared of all estates, interests, claims or charges whatsoever the existence of which depends upon any act, title transaction, event or omission that occurred prior to the effective date of the root of title. The deed from Hollywood Realty Company to Homeseekers Realty Company and the deed from The Highway Construction Company of Ohio, Inc., to Hollywood, Inc., are roots of title within the definition of Section 712.01(2). The plaintiff's claim depends on title transactions which occurred prior to the recording of those deeds. We, therefore, conclude that the allegations in the second amended complaint affirmatively indicate a marketable record title in the defendants as the same is defined by the act. And this marketable record title bars the plaintiff's claim unless the claim is exempt from marketability under either Section 712.03 or Section 712.05. Where the plaintiff has pled facts showing that his claim depends on transactions which occurred prior to the defendants' roots of title and a marketable record title in defendants, the plaintiff, to state a cause of action, was obligated to plead facts showing that his claim of title was not extinguished by the otherwise apparent application of the Marketable Title Act.
The plaintiff argues that the deed of record from the Atlantic Beach Company to Frank M. Terry et al., being a void deed, conveyed nothing. From this premise, the plaintiff proceeds to the conclusion that all subsequent deeds under which the defendants in this case claim title were void and conveyed nothing. Therefore, contends the plaintiff, these deeds contained an "inherent defect" which was not cured or affected by the marketable record title. The plaintiff relies on the language of Section 712.03(1) reading:
"Such marketable record title shall not affect or extinguish the following rights:
"(1) Estates or interests, easements and use restrictions disclosed by and defects inherent in the muniments of title on which said estate is based beginning with the root of title * * *."
The terms "defects inherent in the muniments of title" do not refer to defects or failures in the transmission of title, as the plaintiffs argument suggests, but refer to defects in the make up or constitution of the deed or other muniments of title on which such transmission depends. To accept the plaintiff's proposition would virtually nullify the act because it would preserve from extinction all claims arising out of defective deeds  no matter how far antecedent to the root of title. We accept as sound the view of Professor Barnett who wrote with respect to the exemption now under consideration:
"This exception apparently protects only those interests or claims disclosed by, or based on defects inherent in, the recorded transactions that form the links in the chain of title of the person claiming a marketable record title. The provision means only those links subsequent to and including the root of title itself, although this is not as obvious in the Model Act as in the Florida and Indiana Acts. For example, if the root of title is itself a forged deed, the act will not extinguish the interest of the person whose name appears as grantor therein, even though his interest `depends upon [a] * * * transaction * * * that occurred prior to the effective date of the root of title' and is thus otherwise subject to extinguishment *752 under section 3 of the Model Act. Similarly, the act will not eliminate the problem of forgeries in any link subsequent to the root of title, although it will extinguish the right of owners whose names were forged to links in the chain of title prior to the root. * * *" (Emphasis added.)
Barnett, Marketable Title Acts  Panacea or Pandemonium, 53 Cornell L.Q. 45, 67 (1967). The factual allegations of the complaint demonstrate no defect in the make up or constitution of the deeds previously identified as roots of title or in the subsequent muniments of title. The exemption, therefore, is inapplicable here.
There are no allegations of fact in the second amended complaint indicating that the plaintiff's claim of title is exempt from the effect of the marketable record title by any other provision of Section 712.03. Also there is no factual allegation which would demonstrate that the claim of the plaintiff to the title was preserved by a notice filed in accordance with Section 712.05. In our opinion these were essential allegations where the facts affirmatively alleged show that, but for such an exemption or filing, the plaintiff's claim would be extinguished by the marketable record title held by the defendants. It does not appear from the pleadings, the record, or the briefs, that the plaintiff by a further amendment to the second amended complaint could show that he made such a filing or that his claim was otherwise exempt; therefore, we conclude that the trial court was correct in dismissing the second amended complaint with prejudice.
Finally, the plaintiff contends that his cause of action is based on fraud. It did not accrue, therefore, until the fraud was discovered on or about 1 November 1966. Under Section 95.11(5)(d), F.S. 1967, F.S.A. the plaintiff has three years from the discovery of the fraud within which to commence his action. The plaintiff's contention might be proper if this were an action against Mr. Terry for damages; however, in our opinion Section 95.11 F.S. 1967, F.S.A. does not apply to an action for the recovery of real property which is the essential nature of the plaintiff's claim.
Because of the great importance to the general public of the statute with which we are here concerned and the need of the bench and the bar for authoritative precedent dealing with the statute, it is our intention, upon receipt of proper application, to certify the decision under F.A.R. 4.5(c) (6), 32 F.S.A., as one passing upon a question of great public interest.
The judgment appealed is affirmed.
Affirmed.
CROSS, J., and MINNET, JAMES F., Associate Judge, concur.