302 So.2d 180 (1974)
Robert L. REID and Carolyn E. Reid, Husband and Wife, Appellants,
v.
William H. BRADSHAW et al., Appellees.
No. S-142.
District Court of Appeal of Florida, First District.
October 24, 1974.
*181 Alan B. Fields, Jr., of Dowda, Hedstrom & Fields, Palatka, for appellants.
H. Staten Wilson, Jr. (Deceased), and Dale S. Wilson, of Norton, Arnold & Wilson, P.A., Green Cove Springs, for appellees.
JOHNSON, Acting Chief Judge.
Appellants herein seek review of a final judgment entered upon a final hearing in a quiet title action.
The primary question raised in this appeal is whether Chapter 712, Florida Statutes, known as the Marketable Title Act, has the effect of nullifying homestead interests which have not been recorded within the statutory period provided by said Act. That question as applied to the facts underlying this action was answered in the negative by the trial court and we agree.
As to the question of adverse possession, the trial court correctly found that the plaintiffs below had failed to establish the same.
Returning to the question of whether or not Chapter 712 has the effect of nullifying homestead interests, it is our finding and we so hold that in the absence of some overt act constituting an abandonment on the part of those claiming such homestead rights, the homestead right still exists. The mere lapse of time alone does not wipe out these rights.
We are aware of the fact that the very able jurist, the Honorable Judge Reed of the Fourth District Court of Appeal of Florida, in Marshall v. Hollywood, Inc., 224 So.2d 743 (affirmed by the Florida Supreme Court in 236 So.2d 114) said:
"... The specific enumeration of exceptions to the act in Section 712.03 and the specific provision in Section 712.05 for the protection of valid claims indicates a legislative intent to exclude no other claims from extinction by the operation of Sections 712.02 and 712.04. Dobbs v. Sea Isle Hotel, Fla. 1952, 56 So.2d 341; Biddle v. State Beverage Department, Fla.App. 1966, 187 So.2d 65. For this reason, we do not believe that the rationale in Wright v. Blocker, [144 Fla. 428, 198 So. 88] and Reed v. Fain, supra is pertinent to the Marketable Title Act and hold that under the circumstances depicted by the second amended complaint, the act may be applied to validate a record title even though it may be based on a void deed... ." (Emphasis supplied.)
Judge Reed, as concurred in by two other members of his Court, construed that the legislative intent of Chapters 712.03 and 712.05 was, by the specific provisions of said subsections to exclude no other claims from extinction by the operation of said Sections 712.03 and 712.04. While Judge *182 Reed did not in so many words say that constitutionally vested rights would also be extinguished by Chapter 712 supra, he indicated by his language that the same would be extinguished when he said: "the act may be applied to validate a record title even though it may be based on a void deed ...". In all candor, we must say that the language used both by Judge Reed in 224 So.2d 743 and by Justice Carlton in 236 So.2d 114, supra, gives us great trouble in trying to distinguish the facts and law in the case sub judice from the all encompassing statement of the law laid down in the Marshall case, supra. However, there is still that one distinguishing fact which the legislature did not treat in Chapter 712, nor did Judge Reed nor Justice Carlton in direct language, to wit: That the homestead in question in the case sub judice did not accrue until after the recordation of the "root of the title" as alleged in the complaint, and that the possession of the "homestead children" did not accrue until the death of the widow in 1952. From 1952 until the suit in this case was first filed in the Circuit Court, the period of 30 years had not elapsed. We think the children of the man in whom the homestead was vested at the date of his death had no rights which would be the subject of a title transaction, so long as the widow was alive, although the widow may have attempted to convey the fee title.
Although it might appear at first blush that we are flying directly in the face of our sister court, the Fourth District, as well as of the Florida Supreme Court, we think we have some good points of law, as applied to the facts in this case, which are worthy of consideration, at least to the extent that the trial courts may be guided in their decisions on facts similar to the ones in the case sub judice.
After much research, we think the strong language used by Justice Frank Hobson in Reed v. Fain, 145 So.2d 858, on rehearing, page 864, etc., has not been extinguished by Marshall v. Hollywood, Inc., supra, although Judge Reed said in Marshall v. Hollywood, Inc.,
"For this reason, we do not believe that the rationale in Wright v. Blocker and Reed v. Fain, supra is pertinent to the Marketable Title Act and hold that under the circumstances depicted by the second amended complaint, the act may be applied to validate a record title even though it may be based on a void deed ..."
The fact in Marshall, supra, was that the root of title was from a forged deed, and the real estate was not a homestead. Other things had to happen before a vested interest could attach. We agree with the Marshall cases except as to a homestead property which has not been abandoned.
From the words of Justice Hobson in Reed v. Fain, supra, we take strength in our belief as shown by that opinion, to wit:
"It has always been my understanding that `once a homestead always a homestead' so long as the head of the family, with a child or children in esse, retain such status ... The only exception to the rule . .. is that such property may, in a bona fide transaction based upon an `appropriate consideration,' be alienated as provided in and by our Constitution as the organic directives therein contained have been construed by this Court." (page 865)
At another point in the Reed opinion, we find these words:
"Homestead property is a special kind or species of property. It is so treated in our Constitution and in our statutes. The Legislature originally would have normally and specifically included homestead property had it intended such type of property to be embraced by Section F.S. 95.23, F.S.A... ." (page 864)
Even though the Second District Court, as agreed to by the Supreme Court, in the Marshall case, did "not believe that *183 the rationale in Wright v. Blocker and Reed v. Fain ... is pertinent to the Marketable Title Act ...", this does not change the long standing rule of law that no statute can breathe life into an instrument made and executed in contravention of constitutional inhibition.
While in the Reed case, supra, the statute in question was a statute of limitation involving real estate, we think the words of the court are equally applicable to the statute in question in this case. Had the Legislature wanted Chapter 712 to apply to homestead, such would have been specifically included because in all other statutes, and in the Constitution, the homestead is specifically included or excluded. In other words, in all the laws we have found, special treatment is given to homestead property.
In the case sub judice, the appellants-plaintiffs below, chose to base the plaintiffs' "root of title" on a deed from the owner of the homestead, Joseph Noe, to his wife, dated Novebmer 19, 1929, and recorded in Deed Book 118, page 417, Public Records of Putnam County, Florida. Mr. Noe, the grantor in the deed which forms the "root of title", at the date of such deed to his wife in November, 1929, was living on the subject property as his homestead. He died in 1930, while still residing on this homestead and he had children, heirs of his body, and a wife living with him so that there was no question but that he was qualified to be entitled to all of the constitutional rights pertaining to a homestead as founded in Article X of the Florida Constitution of 1885. Inasmuch as Mr. Noe left surviving him a widow and heirs to whom the homestead exemption should inure as provided in said Article X of the Constitution, the vesting of the homestead occurred subsequent to the "title transaction" which forms the appellants' "root of title" as claimed and alleged in the complaint. Since the death of Mr. Noe, his widow, who was not the mother of the heirs (children) of Mr. Noe, remained in possession of the homestead or had the right to possession under a life estate. This possession by the widow was paramount to the claims of Mr. Noe's heirs, so long as Mrs. Ida Noe (the widow) lived. She had a life estate in such homestead and she could have done as she pleased, so long as she did not commit waste to the remainder which was vested in the heirs of Mr. Joseph Noe.
The cause of action accruing to the children, heirs of Mr. Noe, did not accrue until the death of Mrs. Noe in 1952.[1]
The evidence in the case sub judice is to the effect that the deed which the plaintiffs, appellants herein, claim as the "root of title" in their claim of title, dated November 19, 1929, recorded in Deed Book 118, page 417, November 19, 1929, was a deed from Mr. Joseph Noe to his wife Ida Noe. The deed was slightly different in that the recitations in the deed, in addition to being a conveyance from husband to wife with indications that the wife's signature was not to complete the conveyance to her, but was only for the purpose of conveying the same land to her son, in which it is recited that Mr. Noe was joining in her portion of the deed conveying to her son, was enough to raise a question as to the rights of the grantor's heirs. The address of all three participants in this deed was given as the same rural box number.
It was the allegation in the complaint that fixed the root of title in the 1929 deed which was so irregular as to raise a red flag as to homestead rights accruing to the heirs of the grantor in said deed. Had the root of title been fixed in the 1938 deed, it is probable that the same red flag would not have been raised and probably the Marketable Record Title of Real Property Act would have been conveyed by the Marshall decision. The pleader is bound by his own allegations in the complaint. The root of title showing defects *184 inherent in the Muniment of Title, the exceptions contained in § 712.03, Florida Statutes, attach and the Act no longer is a remedy to clear the constitutional homestead rights of the heirs.
We accept the same view of Professor Barnett, as accepted by the Florida Supreme Court[2] with respect to the exemption now under consideration, to wit:
"This exception apparently protects only those interests or claims disclosed by, or based on defects inherent in, the recorded transactions that form the links in the chain of title of the person claiming a marketable record title. The provision means only those links subsequent to and including the root of title itself, although this is not as obvious in the Model Act as in the Florida and Indiana Acts. For example, if the root of title is itself a forged deed, the act will not extinguish the interest of the person whose name appears as grantor therein, even though his interest `depends upon [a] * * * transaction * * * that occurred prior to the effective date of the root of title' and is thus otherwise subject to extinguishment under section 3 of the Model Act. Similarly, the act will not eliminate the problem of forgeries in any link subsequent to the root of title, although it will extinguish the right of owners whose names were forged to links in the chain of title prior to the root. * * *"
We think the defect is inherent in the recorded transaction which is the Muniment of Title on which said estate is based beginning with the root of title.
We, therefore, affirm the judgment of the lower court.
Affirmed.
BOYER, J., specially concurring.
SPECTOR, J., dissents.
BOYER, Judge (specially concurring).
My initial cursory examination of the opinion of our Supreme Court in Marshall v. Hollywood, Inc., Sup.Ct.Fla. 1970, 236 So.2d 114, led me to the conclusion that it held contrary to my impression of the law, which is in accordance with the majority opinion on rehearing as set forth in Reed v. Fain, Sup.Ct.Fla. 1962, 145 So.2d 858. However, a careful reading of Marshall reveals that the court there considered a deed which was void by reason of forgery as distinguished from a deed void by reason of being violative of the constitutional provisions pertaining to homestead.
The court was careful to point out in Marshall that it was declining to consider the constitutionality of Chapter 712 Florida Statutes, the Marketable Title Act, because it was not properly raised for review and that "For purposes of disposing with this litigation, we will act on the assumption that the Act is constitutional." (236 So.2d at page 118)
The Constitution of 1885, applicable to the facts in the case sub judice, prescribed a manner in which a homestead could be alienated. The deed from Mr. Noe to his wife Ida in 1929 was violative of the constitutional provision and was therefore void. (Reed v. Fain, supra) The question then arises as to whether Chapter 712 can breathe life into a chain of title which emanated from a deed void because of violation of a constitutional provision. Query: Is Chapter 712, if so construed, constitutional? Alas, we find ourselves in the same position as the Supreme Court in the Marshall case in that this point has not been raised on this appeal and therefore may not be considered by us.
However, because of the unique distinction between homestead properties (as observed in the foregoing opinion) and non-homestead, I concur with Judge Johnson that the Marshall case is not dispositive of the case sub judice and that, as to homestead, *185 the majority opinion on rehearing in Reed v. Fain, supra, is controlling.
I accordingly concur in affirmance.
SPECTOR, Judge (dissenting):
I respectfully dissent from the majority opinion of this court in this case.
After the pleadings were settled, evidence was taken and the trial court held that the subject property was a homestead within the meaning of the 1885 Constitution of Florida; that the conveyance of Joseph Noe in 1929 was void ab initio; that there was no showing of adverse possession made by appellants; and, lastly, that even though appellants held under a root title which was of record for more than thirty years, the Marketable Title Act, Chapter 712, Florida Statutes, did not extinguish the rights of the Noe heirs because of the homestead character of the property at the time of the conveyance from Mr. Noe to Ida Noe in 1929. In so ruling on the last point, the trial court expressly held that the Supreme Court's recent decision in Marshall v. Hollywood, Inc., 236 So.2d 114, was inapplicable to the instant case because it did not deal with "constitutional rights" and was therefore distinguishable. By "constitutional rights" the trial court obviously was referring to the homestead provisions found in Article X, Sections 1, 2 and 4, Florida Constitution of 1885. Section 1 exempts homestead property from execution or forced sale, and Section 2 provides that such exemption from execution shall inure to the widow and heirs. Section 4 provides, inter alia, that the homestead may be alienated by deed or mortgage duly executed as provided therein, notwithstanding the exemption provided in Sections 1 and 2.
Appellees assert that Chapter 712, Florida Statutes, as applied and interpreted in Marshall, supra, is inapplicable to homestead property by reason of the cited constitutional provisions and statutes in furtherance thereof which were in effect at the time of Mr. Noe's invalid effort to alienate his homestead to Mrs. Ida Noe. In support thereof, appellees rely on Reed v. Fain, 145 So.2d 858 (Fla. 1962), and like cases.
On the other hand, appellants rely on Chapter 712, Florida Statutes, and Marshall v. Hollywood, Inc., supra. The court in Marshall held that claims arising out of transactions, whether based upon forgeries or not, predating the effective root of title are extinguished by operation of Chapter 712, Florida Statutes, unless claimants can come in under any of the specified exceptions to the act. The root title in the Marshall case emanated from a prior deed that was void by reason of a forgery. Nonetheless, the court held the rightful claim of Marshall had been extinguished by Chapter 712, Florida Statutes, and that holders for the prescribed period under the void deed had marketable title.
In arriving at its decision, the Supreme Court rejected its earlier holding in Reed v. Fain, supra, that a void deed is of no effect even though it is recorded and distinguished its holding in Reed from the Marshall case saying that the Marketable Title Act, Chapter 712, Florida Statutes, goes beyond previous enactments, referring to Section 95.23, Florida Statutes, which in Reed was held inapplicable to a deed executed in violation of the homestead provisions of the Constitution. Although homestead property was not involved in Marshall and therefore that case is not directly dispositive of the instant case, nonetheless I feel that latent homestead claims, even though of constitutional origin, are subject to being extinguished if notice of such claim is not filed pursuant to the statute.
It is to be noted that Uniform Title Standard 17.4 and 17.5, Chapter 689 App., 20 F.S.A., hold that both dower and homestead claims are subject to extinguishment by Chapter 712 if no claim relating to dower or homestead is filed.
*186 Accordingly, I believe that the Supreme Court's decision in Marshall, supra, is applicable and requires the judgment appealed herein to be reversed.
NOTES
[1] Berger v. Jackson, 156 Fla. 768, 23 So.2d 265 (1945).
[2] Barnett, Marketable Title Acts-Panacea or Pandemonium, 53 Cornell L.Q. 45, 67 (1967).