346 So.2d 1004 (1977)
ITT RAYONIER, INCORPORATED, Etc., Plaintiff,
v.
William L. WADSWORTH et al., Defendants.
No. 49229.
Supreme Court of Florida.
April 28, 1977.
Rehearing Denied June 28, 1977.
*1005 Thomas M. Baumer, William E. Williams and William H. Adams, III, of Mahoney, Hadlow & Adams, Jacksonville, for plaintiff.
Henry P. Duffett and Norman Peter Laskey of Duffett, Barry, Seps, Akers & Burnett, Ormond Beach, and Kate L. Walton of Walton & Townsend, Palatka, for defendants.
BOYD, Justice.
ITT Rayonier, Inc. filed suit in the United States District Court for the Middle District of Florida to Quiet Title in itself to certain land in Flagler County against the claims of three children of Lotta M. and L.E. Wadsworth, Sr. The District Court granted summary judgment in favor of Rayonier and an appeal to the U.S. Circuit Court of Appeals, Fifth Circuit, was taken by the three Wadsworth children. Finding the appeal to present issues of Florida constitutional law, as well as of statutory construction and application which are appropriate for our resolution, the Fifth Circuit certified to us four questions. A statement of facts and the questions are contained in the Fifth Circuit's Certificate, prepared pursuant to Section 25.031, Florida Statutes, and Rule 4.61, Florida Appellate Rules, as follows:
"L.E. Wadsworth, Sr., died September 21, 1935. At the time of his death he was the *1006 head of his family and owned and occupied as his homestead a portion of the land known as `St. Joe' in Flagler County, Florida, which is the land involved in this action. (Hereafter, `the land.') He was survived by his widow, Lotta M. Wadsworth, and four children, William L. Wadsworth, Mary Elizabeth Wadsworth Taylor, Joseph Brady Wadsworth and Lewis E. Wadsworth, Jr.
"On August 18, 1937, Lotta M. Wadsworth executed an instrument (hereafter `the 1937 deed') the material portions of which are as follows:
`THIS DEED, BILL OF SALE AND ASSIGNMENT OF LEASES, made and executed this 18 day of August, A.D. 1937, by and between Lotta M. Wadsworth, widow, of Flagler County, Florida, herein called party of the first part, and Lotta M. Wadsworth, and Lewis E. Wadsworth, of Flagler County, Florida, as copartners doing business under the name and style of Wadsworth & Company, herein called parties of the second part.
`WITNESSETH: That the said party of the first part for and in consideration of the sum of Ten Dollars ($10.00), and other good and valuable considerations to her in hand paid by the parties of the second part, the receipt whereof is hereby acknowledged, has granted, bargained, sold and conveyed, and by these presents does hereby grant, bargain, sell and convey unto the parties of the second part, their heirs, legal representatives and assigns, all of the following described pieces, parcels and tracts of land, lying and being situate in the County of Flagler, in the State of Florida, to-wit:
`... The land (and other lands)... .
`And for the considerations aforesaid the said party of the first part has further bargained, sold and conveyed, and by these presents does hereby bargain, sell, convey and deliver unto the parties of the second part, their legal representatives and assigns, all of the following described personal properties used at and in connection with the naval stores business now being operated by the party of the first part, near and in the vicinity of Bunnell, Flagler County, Florida, known as the St. Joe Place, to-wit:
`One 30 barrel turpentine still and fixtures complete.
120 dip barrels, more or less.
One pump and gas engine.
One glue kettle.
All turpentine tools and tools of all kinds.
All turpentine cups, gutters and aprons.
All turpentine cup faces.
One commissary, stock and fixtures.
All still supplies, spirit barrels, staves, heading, hoop iron, glue, batting and other supplies.
One Delco Light Plant.
All Cord Wood.
All hands' accounts and book accounts.
One 1937 Ford V-8 Truck.
One 1929 Modeal (sic) A Ford.
Three Hoover wagons and harness.
Three horses.
Four Mules.
All dwellings, buildings, shanties, houses, barns, garages, sheds, appurtenances, appliances, fixtures and equipments.
All crdue (sic) gum, dip and scrape, gathered and ungathered.
All manufactured spirits of turpentine, rosen and dross, whether on hand at the still, at the port, in transit, or elsewhere.
All other personal property, of all kinds, used at and in connection with said turpentine plant and business, whether herein specifically described or not.
`And for the considerations aforesaid the said party of the first part has further bargained, sold, assigned, transferred and set over, and by these presents does hereby bargain, sell, assign, transfer, set over and deliver unto the parties of the second part, their heirs, legal representatives and assigns, all of the following described turpentine leases, and all of her right, title and interest therein, thereto and thereby granted, and any benefits to be derived therefrom, and all property, property rights, privileges, and equities in and to the same, and of, in and to the lands thereby leased, for the terms therein limited, to-wit:

*1007 `... (Description of turpentine leases also transferred are omitted.) ...
`It is the intention of the said party of the first part to sell and convey unto said parties of the second part, their heirs, legal representatives and assigns, all of the real estate, leases, leasehold rights and privileges, goods, chattels, personal properties, and all other properties of what kind and nature soever belonging to, owned and used in connection with the turpentine plant and business known at (sic) the St. Joe Place near Bunnell, Flagler County, Florida, whether herein specifically described or not.
`SUBJECT, HOWEVER, to the lien of the following described mortgages, to-wit:
`Mortgage deed made by T.C. Holden and wife, A.L. Johnson and wife, and L.E. Wadsworth and wife, to Baldwin-Lewis-Pace Company, dated February 12, 1929, and recorded in Book 8 of Mortgages, pages 240-245, incl. public records of Flagler County, Florida. Assigned to Turpentine & Rosin Factors, Inc., by assignment dated Feb. 7, 1931, recorded in Assign. Book 2, pages 126-7, public records of Flagler County, Florida.
`Mortgage deed and contract made by L.E. Wadsworth and wife to Turpentine & Rosin Factors, Inc., dated October 11, 1934, recorded in Book 9 of Mortgages, pages 402-410, incl. public records of Flagler County, Florida.
`Mortgage deed and contract made by Lotta M. Wadsworth, widow, to Turpentine & Rosin Factors, Inc., dated August 11, 1937, recorded in Book 10 of Mortgages, pages 368 et seq. public records of Flagler County, Florida.
`which said parties of the second part, by the acceptance of this conveyance, hereby assume and agree to pay, as a part of the consideration therefor.
`TO HAVE AND TO HOLD all of said properties above described unto said parties of the second part, their heirs, legal representatives and assigns forever. And the said party of the first part does hereby fully warrant the title to said properties hereby conveyed, and covenants that she will defend the same against the lawful claims of all persons whomsoever, except as aforesaid.
`The properties hereinabove described are conveyed to the partners in said co-partnership of Wadsworth & Company as follows:
`TO LOTTA M. WADSWORTH, a three-fourths undivided interest.
`TO LEWIS E. WADSWORTH a one-fourth undivided interest.'
"This instrument was signed, sealed, witnessed and acknowledged by Lotta M. Wadsworth and was placed of record in August of 1937.
"This is the deed which Rayonier contends is a `root of title' within the provisions of the Florida Marketable Record Title Act, Florida Statutes, Section 712.01.
"By deed dated December 30, 1942, and recorded on January 18, 1943, Lotta M. Wadsworth and Lewis E. Wadsworth, Jr., conveyed the land together with other real property in Flagler County, Florida, to Rayonier Incorporated, now ITT Rayonier, Incorporated. Lotta M. Wadsworth is still living.
"By instruments recorded in 1971, William L. Wadsworth, Mary Elizabeth Wadsworth Taylor and Joseph Brady Wadsworth (hereafter called appellants), first filed of record notice of their claims each to a vested undivided one-fourth interest in remainder in the lands which had been the homestead of their father at the time of his death, subject only to the life estate of their mother, Lotta M. Wadsworth.
"On October 25, 1972, Rayonier, being in possession and claiming full fee title to the land, filed suit in the United States District Court for the Middle District of Florida to quiet title in itself to the land against the claims of the appellants.
"The District Court granted Summary Judgment on Rayonier's motion, holding that the Florida Marketable Record Title Act, Chapter 712, Florida Statutes, as applied *1008 to the 1937 deed, extinguished any interests of appellants in the land. The appellants challenge this conclusion, asserting the continuing validity of their remainder interests in the land that was their father's homestead at his death in 1935, and that the 1937 deed, purporting to convey the fee title to the land is not a valid `root of title' as to their remainder interests, within the meaning of the Florida Marketable Record Title Act, Chapter 712, Florida Statutes.

* * * * * *
"1. The parties are unable to agree as to the form of the first question. Accordingly, this question is set forth in the form proposed by appellants and by appellee:
"Question 1 as proposed by Appellants: With respect to the interest purportedly conveyed to Lotta by the 1937 deed, does the deed constitute a valid `root of title' upon which can be established a `marketable record title' within the meaning of Florida Statutes, Sections 712.01 and 712.02?
"Question 1 as proposed by Appellee: Does the 1937 deed from Lotta M. Wadsworth constitute a valid `root of title' upon which can be established a `marketable record title' within the meaning of Florida Statutes, Sections 712.01 and 712.02?
"2. If the answer to 1 is in the affirmative, are the rights of appellants within the exception to the operation of the Marketable Record Title Act provided by Florida Statutes, Section 712.03(1)?
"3. If the answer to 1 is in the affirmative, are the rights of appellants within the exception to the operation of the Marketable Record Title Act provided by Florida Statutes, Section 712.03(3)?
"4(a). Are the interests which appellants claim protected by the provisions of the Florida Constitution of 1885 and Florida statutory law applicable in 1935 as they relate to homestead?
"(b) If the answer to 4(a) is in the affirmative, does the Florida Marketable Record Title Act extinguish them in the same manner as it extinguishes other interests in land?
"(c) If the answer to 4(b) is in the affirmative, is the Marketable Record Title Act as so applied unconstitutional under the Florida Constitution of 1885?"
As we answer the questions which concern statutory construction of the Marketable Record title Act we keep in mind the legislative intent that the Act be liberally construed[1] to effectuate its purpose. That purpose,[2] expressed within the Act, is to simplify and facilitate land title transactions. It does so in two ways. First, it gives to a person marketable title when public records disclose a title transaction, of record for at least thirty years, which purports to create the estate either in that person or in someone else from whom the estate has passed to that person.[3] Second, subject to six exceptions,[4] it extinguishes all *1009 interests in the estate which predate the "root of title."[5]
Question # 1:
It appears from the face of the alternative first questions that the children see at issue only the three-fourths interest in the land conveyed to Lotta by the 1937 deed, while Rayonier sees at issue the entire conveyance. However, the difference over the form of the question is of no concern, because of our answer.
"Root of title means any title transaction purporting to create or transfer the estate claimed by any person and which is the last title transaction to have been recorded at least thirty years prior to the time when marketability is being determined. The effective date of the root of title is the date on which it was recorded." Section 712.01(2)
The three children argue that insofar as it concerns Lotta's three-fourths interest in the land, the 1937 deed is not a "root of title" because it is neither a "title transaction" which "affects title" nor does it "purport" to create or transfer an estate. They premise their argument on the inability of a person to convey real property to himself and draw support for the premise from Johnson v. Landefeld, 138 Fla. 511, 189 So. 666 (1939). In Landefeld a husband conveyed non-homestead realty to himself and his wife as tenants by the entirety. The conveyance was upheld by the Circuit Court and by an equally divided vote this Court affirmed. Those who voted for affirmance stated the legal effect of the deed was to convey to the wife an interest in the entire estate equal to that reserved by the husband. Thus, under Landefeld, the children's argument continues, the 1937 deed merely reserved or retained for Lotta a three-fourths interest in the land, and as to that interest it did not "purport to create or transfer an estate" or "affect title" and cannot constitute a root of title. Reliance *1010 on Landefeld misses the mark. The deed conveyed all of the land to Lewis and Lotta together, with their undivided interests in the total to be one-quarter and three-quarters, respectively. Unity of possession is the essence of a tenancy in common. Andrews v. Andrews, 155 Fla. 654, 21 So.2d 205 (Fla. 1945). Thus, the deed did not retain an interest for Lotta; rather, it attempted to create a tenancy in common, of which Lotta was one of the tenants. In this way the deed "purported" to create or transfer an estate and "affected title" so that it was a title transaction.
Any other argument that the deed is not a valid "root of title" fails. It should be obvious that the deed "purports" to create or transfer an estate. Purport is defined in Webster's 3d New International Dictionary, unabridged (1962), as "profess outwardly: have the often specious appearance of being." Certainly the Legislature intended the word "purport" to have its accepted meaning. The 1937 deed meets that meaning.
The deed "affects title" and, in turn, is a title transaction as those terms have been construed in Florida. In Marshall v. Hollywood, Inc., 224 So.2d 743 (Fla. 4th DCA 1969), the Fourth District Court, speaking through Judge Reed, stated at page 749:
"The word `affecting' as it is used in the second sentence of Section 712.02 in the clause `affecting the title to the land' does not carry the narrow meaning of `changing or altering'. The word is used in the broader sense meaning `concerning' or `producing an effect upon'. In this broad sense, even a void instrument of record `affects' land titles by casting a cloud or a doubt thereon. Clements v. Henderson, 1915, 70 Fla. 260, 70 So. 439; Brown v. Solary, 1896, 37 Fla. 102, 19 So. 161."
The Marshall decision was upheld in an opinion discharging a writ of certiorari in the cause, Marshall v. Hollywood, Inc., 236 So.2d 114 (Fla. 1970), in which this Court said at page 118:
"The arguments which we have enumerated have been thoroughly explored and correctly analyzed by Judge Reed in the lucid and cogent opinion affirming the Circuit Court dismissal which he prepared for the District Court below. There is little we could add to his opinion ..."
The 1937 deed, whether partially ineffectual or not, "affected title" and was a "title transaction" as those terms are construed in Marshall.
Additionally, the children's argument overlooks the extent of Lotta's interest in the property at the time of the conveyance. When her husband died, the laws of this State governing descent of homestead[6] gave to Lotta a life estate in his homestead property subject to the vested remainders in her four children. When the 1937 deed was executed Lotta continued to possess only a life estate in the former homestead, yet, on its face, the deed conveys it in fee simple absolute. By attempting to enlarge her estate as to her undivided three-fourths interest in the property the deed affects title.
Since the 1937 deed is a title transaction which purports to transfer or create an estate, it qualifies as a "root of title." The first question is answered in the affirmative.
Question # 2:
Section 712.03, Florida Statutes, provides that marketable record title will not extinguish six categories of rights that predate the root of title. The first of them, found in subsection (1), is "estates or interests, easements and use restrictions disclosed by and defects inherent in the muniments of title on which said estate is based beginning with the root of title." The children argue that their remainder interests are within the first category because the 1937 deed has two inherent defects: (1) it conveyed their remainder interests and (2) it conveyed property from Lotta to herself. The phrasing of their argument shows a *1011 misunderstanding of the statute. As the Fourth District Court of Appeal stated in Marshall:
"The terms `defects inherent in the muniments of title' do not refer to defects or failures in the transmission of title, as the plaintiffs argument suggests, but refer to defects in the make up or constitution of the deed or other muniments of title on which such transmission depends." 224 So.2d at 751.
The face of the deed does not reflect the defect of a conveyance from Lotta to herself. As explained in our answer to the first question, the deed conveyed all of the property from Lotta to Lewis and herself as tenants in common. There is nothing defective about such a conveyance.
As to whether conveyance of their remainder interests is a defect inherent in the 1937 deed, the children rely on Reid v. Bradshaw, 302 So.2d 180 (Fla. 1st DCA 1974). Bradshaw concerned the application of the Marketable Record Title Act to a deed (the root of title) which conveyed homestead property in contravention of Article X, Section 4, Florida Constitution (1885). That provision of the 1885 Constitution required alienation of homestead property by both husband and wife when the relationship existed. The court found the deed to have the inherent defect of being executed without the wife's participation, a defect evident from the face of the deed. Furthermore, the court expressed concern over application of the Act to homestead property. This case is distinguishable because, unlike Bradshaw, the 1937 deed did not convey homestead property. L.E. Wadsworth, the person seized of the property as homestead, had died in 1935. Property loses its character as homestead when the head of the family dies. Wilson v. Florida Nat. Bank & Trust Co. at Miami, 64 So.2d 309 (Fla. 1953). Consequently we need not be concerned with constitutional provisions governing homestead as was the District Court in Bradshaw.[7] Since there is nothing on the face of the deed, in its make up or construction, to indicate that it conveys the children's remainder interest, those interests are not saved from extinguishment by subsection (1) of Section 712.03, Florida Statutes.
The second question is answered in the negative.
Question # 3:
Section 712.03(3) provides that the rights of any person in possession of the lands are not extinguished or affected by the Marketable Record Title Act, so long as such person is in possession. The children argue that possession under a life estate is possession in recognition of the whole fee, so it is in effect possession for the vested remaindermen, as well as for the life tenants. They present no firm authority for their "constructive" possession theory. Even were we to accept it, it has no application here. Subsection (3) applies only so long "as the person remains in possession." Lotta, through whom the children had constructive possession under the theory, gave up her possession to the property after she and Lewis deeded the property to Rayonier.[8]
The question is answered in the negative.
Question # 4:
(a) The interests of the children are not protected by any provision of the Florida Constitution of 1885 because, as explained under Question # 2, the property was not homestead at the time the 1937 deed was executed.
The statutory law applicable in 1935 to descent of homestead is Chapter 16103, Section 28, Laws of Florida (1933). When their father died, this statute gave the children vested remainders in his homestead. However, *1012 the statute is not a shield from operation of the Act. As Judge Reed, who coincidentally authored the opinion in this case for the U.S. District Court, Middle District, Florida, as well as the Fourth District's opinion in Marshall, supra, stated in this case:
"Section 712.03 delineates specifically the interests which are not subject to extinction by the Act, and the statutory interest of homestead beneficiaries which vested prior to the root of title is not among them. Thus, the only reasonable assumption to be drawn from the express terms of the Act is that the Legislature did not intend to except therefrom such interests of persons claiming under the homestead statute (now F.S.A. § 731.27). See Marshall v. Hollywood, Inc., Fla.App. 1969, 224 So.2d 743, 750, where the Court said:
"`... The specific enumeration of exceptions to the act in Section 712.03 and the specific provision in Section 712.05 for the protection of valid claims indicates a legislative intent to exclude no other claims from extinction by the operation of Sections 712.02 and 712.04.'
"To adopt the defendants' contention would be to subvert the major legislative purpose of the Act which is, as stated by the Florida Supreme Court in Marshall v. Hollywood, Inc., `... to simplify and facilitate land title transactions by allowing persons to rely on a record title as described by F.S. § 712.02, F.S.A., subject only to such limitations as appear in F.S. § 712.03, F.S.A.'"

ITT Rayonier v. Wadsworth, 386 F. Supp. 940 at 943 (D.C.Fla., 1975).
The question is answered in the negative.
Our answer to subsection (a) of Question # 4 makes unnecessary answers to subsections (b) and (c).
These answers are respectfully submitted to the U.S. Court of Appeals, Fifth Circuit.
OVERTON, C.J., and ADKINS, ENGLAND, SUNDBERG and HATCHETT, JJ., concur.
NOTES
[1] "712.10 Law to be liberally construed.  This law shall be liberally construed to effect the legislature purpose of simplifying and facilitating land title transactions by allowing persons to rely on a record title as described in § 712.02 subject only to such limitations as appear in § 712.03."
[2] Id.
[3] "712.02 Marketable record title.  Any person having the legal capacity to own land in this state, who, alone or together with his predecessors in title, has been vested with any estate in land of record for thirty years or more, shall have a marketable record title to such estate in said land, which shall be free and clear of all claims except the matters set forth as exceptions to marketability in § 712.03. A person shall have a marketable record title when the public records disclosed a title transaction affecting the title to the land which has been of record for not less than thirty years purporting to create such estate either in:

(1) The person claiming such estate; or
(2) Some other person from whom, by one or more title transactions, such estate has passed to the person claiming such estate, with nothing appearing of record, in either case, purporting to divest such claimant of the estate claimed."
[4] "712.03 Exceptions to marketability.  Such marketable record title shall not affect or extinguish the following rights:

(1) Estates or interests, easements and use restrictions disclosed by and defects inherent in the muniments of title on which said estate is based beginning with the root of title; provided, however, that a general reference in any of such muniments to easements, use restrictions or other interests created prior to the root of title shall not be sufficient to preserve them unless specific identification by reference to book and page of record or by name of recorded plat be made therein to a recorded title transaction which imposed, transferred or continued such easement, use restrictions or other interests; subject, however, to the provisions of subsection (5).
(2) Estates, interests, claims, or charges preserved by the filing of a proper notice in accordance with the provisions hereof.
(3) Rights of any person in possession of the lands, so long as such person is in such possession.
(4) Estates, interests, claims, or charges arising out of a title transaction which has been recorded subsequent to the effective date of the root of title.
(5) Recorded or unrecorded easements or rights, interests or servitude in the nature of easements, rights-of-way and terminal facilities, including those of a public utility or of a governmental agency, so long as the same are used and the use of any part thereof shall except from the operation hereof the right to the entire use thereof. No notice need be filed in order to preserve the lien of any mortgage or deed of trust or any supplement thereto encumbering any such recorded or unrecorded easements, or rights, interest, or servitude in the nature of easements, rights-of-way, and terminal facilities. However, nothing herein shall be construed as preserving to the mortgagee or grantee of any such mortgage or deed of trust or any supplement thereto any greater rights than the rights of the mortgagor or grantor.
(6) Rights of any person in whose name the land is assessed on the county tax rolls for such period of time as the land is so assessed and which rights are preserved for a period of three years after the land is last assessed in such person's name."
[5] "712.04 Interests extinguished by marketable record title.  Subject to the matters stated in § 712.03, such marketable record title shall be free and clear of all estates, interests, claims or charges whatsoever, the existence of which depends upon any act, title transaction, event or omission that occurred prior to the effective date of the root of title. All such estates, interests, claims or charges, however denominated, whether such estates, interests, claims or charges are or appear to be held or asserted by a person sui juris or under a disability, whether such person is within or without the state, whether such person is natural or corporate, or is private or governmental, are hereby declared to be null and void, except that this chapter shall not be deemed to affect any right, title or interest of the United States, Florida or any of its officers, boards, commissions or other agencies reserved in the patent or deed by which the United States, Florida or any of its agencies parted with title."
[6] Chapter 16103, § 28, Laws of Fla. (1933).
[7] The Bradshaw decision recognized that a case such as this one, in all likelihood, would not fall under its holding when it stated that had the root of title been fixed in a deed after the husband's death (when the property no longer possessed homestead character) the root probably would not have been inherently defective. Reid at 183.
[8] She was not in possession at the time the children's notice of their claim to the land was filed in 1971.