**Leonard M. HARRELL,**
**Plaintiff–Appellee,**

v.

**Doyle Alva WESTER, Eugenia W. Pelt, and Billy Wester Dickson, Defendants,**

**Pencie W. Wester, Defendant–Appellant.**

**No. 87–3716.**

United States Court of Appeals, Eleventh Circuit.

Aug. 29, 1988.

J. Paul Griffith, Griffith & Griffith, Frank A. Baker, Marianna, Fla., for defendant-appellant.

Ben Kirbo, Bainbridge, Ga., for plaintiff-appellee.

Before TJOFLAT, VANCE and COX, Circuit Judges.

VANCE, Circuit Judge:

Plaintiff Leonard M. Harrell brought this action to establish a declaration of trust in certain real property held by the defendants and to obtain an accounting of proceeds derived from the property. After a non-jury trial the district court ordered defendant Pencie W. Wester to convey a portion of the property to Harrell and to pay Harrell $98,074.27 in proceeds she had received from the property. Because we conclude that Harrell's action is barred by Florida's Marketable Record Title Act (MRTA), Fla.Stat. §§ 712.01–.10, we reverse.

## I.

In June 1938 W.W. Wester died intestate. He was survived by his widow, defendant Pencie W. Wester, and eight children. Four of the children were from a prior marriage: Nettie W. Cogburn, Elee W. Glisson, Annette W. Bevis and Emmett W. Wester. The remaining four children were from the marriage with Pencie Wester: Bil-

ly W. Dickson,[1] Pencie E. Pelt, Doyle A. Wester and Dona Rebekah Wester Harrell.[2] At the time of their father's death the children in the latter group were all below the age of majority, and Pencie Wester was appointed their legal guardian.

At the time of his death W.W. Wester owned a substantial amount of real and personal property. In January 1939 Pencie Wester elected to have one-third of the property set aside as dower. The remaining property passed to W.W. Wester's eight children in equal shares under Florida's intestacy statute.

Emmett Wester was the administrator of his father's estate. During the pendency of the administration he and Pencie Wester sought to negotiate a physical division of the real property among the two sets of children. Each tentative agreement, however, was viewed critically by the older set of children and rejected.

Emmett Wester was no more successful in maintaining the estate property. He failed to pay the ad valorem taxes on much of the real property, and in 1940 portions of the property were publicly advertised for sale. When Pencie Wester learned that the property had been advertised for sale she proceeded to purchase the tax certificates to the property. Over the next several years she purchased at least thirteen tax certificates to various pieces of estate property. Although there were ample funds in the guardianship bank accounts, Pencie Wester used her own money to make the purchases. From 1943 to 1946 she redeemed the tax certificates for tax deeds which she duly recorded.

Pencie Wester held the property she had purchased for taxes as her own.[3] Over the years she entered into a number of transactions involving the property, including

---

**1.** Billy W. Dickson is referred to as Billie W. Dickson and Willie W. Dickson in various portions of the record. Hereinafter we will refer to her as Willie W. Dickson.

**2.** The defendants in this action are Pencie Wester and three of W.W. Wester's children: Willie W. Dickson, Pencie E. Pelt and Doyle A. Wester. Dona Rebekah Wester Harrell, who was plaintiff Leonard Harrell's wife, is deceased.

**3.** In October 1942 the probate court entered its order of distribution and discharge in the administration of W.W. Wester's estate. In that order the probate court "adjudged and decreed that all of the lands of the said estate are hereby turned over to the heirs of said estate." Inexplicably, Emmett Wester, the estate's administrator, failed to execute any deeds of distribution.

grants of mineral and timber leases and sales of several parcels of the property. At no time did Pencie Wester list the property or the proceeds from the transactions on the annual guardianship returns she filed with the probate court.[4]

Shortly before her final discharge as guardian in 1960, Pencie Wester conveyed 240 acres of the land she had acquired by tax deed to her daughter, defendant Willie Dickson. In the years following her discharge as guardian, Pencie Wester engaged in a number of transactions involving the property. In 1962 she conveyed 160 acres of the land to her daughter Rebekah Harrell. In 1973 Pencie Wester transferred 320 acres of the land to her daughter, defendant Willie Dickson. That same year she transferred another 320 acres of the land to her son, defendant Doyle Wester. In 1974 the State of Florida condemned a portion of the property. Later that year, Pencie Wester sold 20 acres of the property to a third party. Finally, in 1979 Pencie Wester conveyed 320 acres of the property to her daughter, defendant Pencie Pelt.

Plaintiff Leonard Harrell had entered the picture in 1962 when he married Pencie Wester's daughter Rebekah. In September 1962 the Harrells gave birth to a son, Maurice Wester Harrell. Rebekah Harrell spent the next ten years in and out of psychiatric hospitals, and in 1973 she died intestate as a result of a self-inflicted gunshot wound. Her only heirs were the plaintiff and her son Maurice. In 1980 Maurice Harrell began to have psychiatric problems, and in 1983 he committed suicide. His only heir was his father.

Shortly after Maurice Harrell's death Pencie Wester asked the plaintiff to execute some quitclaim deeds. This request led Harrell to believe that he might have some interest in the property as heir of his wife and son. He brought this action in August 1984.

In 1985 the parties each filed motions for summary judgment. After reviewing the stipulated facts, the district court concluded that Harrell might be entitled to a one-quarter interest in the real property from W.W. Wester's estate.[5] In reaching its conclusion the court noted that Rebekah Harrell had inherited an interest in the property upon W.W. Wester's death in 1938.[6] The court reasoned that the plaintiff had inherited that interest following the deaths of Rebekah and Maurice Harrell.

In their motions for summary judgment the defendants raised the defense of laches. They also argued that the plaintiff's claim was barred by the MRTA. After examining these defenses the court concluded that genuine issues of material fact prevented the resolution of the case on a motion for summary judgment. Accordingly, the court denied all motions for summary judgment and the case proceeded to trial.

The case was tried before the court in April 1987. In its order the court concluded that Harrell's claim was not barred by laches or the MRTA. It therefore determined that Harrell was entitled to a one-fourth interest in the real property from W.W. Wester's estate, excluding the property set aside as dower and the property conveyed to Rebekah Harrell in 1962, and ordered defendant Pencie Wester to convey to Harrell some 284.43 acres of land. The court also ordered Pencie Wester to pay Harrell $98,074.27 as proceeds she had received from the property.[7] Following the

---

**4.** Although Pencie Wester did not list the property or the proceeds derived from it on the guardianship returns, she used the proceeds from the land to support and educate her four children.

**5.** Harrell did not assert a claim to any of the personal property from the estate.

**6.** Although Pencie Wester subsequently purchased tax deeds to the estate property, the court concluded that she held the property in

trust for her children. The court's conclusion that Rebekah Harrell held a one-fourth interest in the property is somewhat puzzling in light of the fact that W.W. Wester had eight children. Because of our disposition of the case, however, we need not address this issue.

**7.** The court ordered the judgment satisfied solely out of property and proceeds held by Pencie Wester. Accordingly, the court ordered that Harrell take nothing from defendants Doyle Wester, Pencie Pelt and Willie Dickson.

court's entry of judgment, Pencie Wester brought this appeal.

## II.

Because we conclude that Harrell's claim is barred by the MRTA, we limit our discussion to that issue. Florida enacted the MRTA in 1963 as a comprehensive reform in land conveyancing procedures. *City of Miami v. St. Joe Paper Co.*, 364 So.2d 439, 442 (Fla.1978), *appeal dismissed*, 441 U.S. 939, 99 S.Ct. 2153, 60 L.Ed.2d 1040 (1979); *see Askew v. Sonson*, 409 So.2d 7, 13 (Fla. 1981) (the MRTA was enacted for the purpose of "simplifying and facilitating land title transactions"). In essence, the Act declares marketable title in a recorded chain of title that is more than thirty years old and extinguishes all interests that are older than the root of that chain of title.

Florida Statutes section 712.02 provides in part:

A person shall have a marketable record title when the public records disclosed a record title transaction affecting the title to the land which has been of record for not less than 30 years purporting to create such estate either in:

(1) The person claiming such estate; or

(2) Some other person from whom ... such estate has passed to the person claiming such estate....

Marketable title is title "free and clear of all estates, interest, claims, or charges whatsoever, the existence of which depends upon any act, title transaction, event or omission that occurred prior to the effective date of the root of title." Fla.Stat. § 712.04. The MRTA will not extinguish claims to property if the claimant files notice of a claim before the expiration of the thirty year limitation period, *see id.* § 712.05, or if the claimant falls within one of the statutory exceptions. *See id.* § 712.03.

The defendants argued before the district court that Pencie Wester's recording of the tax deeds to the property in the 1940's constituted a title transaction that purported to vest title in her. They reasoned that because Harrell's claim to the property stemmed from an event that occurred prior to that title transaction or root of title, his interest had been extinguished by the running of the MRTA's thirty year limitation period.[8] The district court rejected the defendants' argument. It pointed out that Pencie Wester's purchase of the tax deeds in her name alone constituted an abuse of the fiduciary relationship arising out of her guardianship and thus a constructive fraud. *See Harrell v. Branson*, 344 So.2d 604, 606–07 (Fla.Dist.Ct.App.), *cert. denied*, 353 So.2d 675 (Fla.1977). The court held that as between the parties to this action Pencie Wester's constructive fraud prevented the tax deeds from serving as effective title transactions or roots of title under the MRTA.[9] Accordingly, the court concluded that the MRTA did not bar Harrell's claim.

There is no doubt that a tax deed can serve as a root of title under the MRTA. *See Allen v. St. Petersburg Bank & Trust Co.*, 383 So.2d 1171, 1172 (Fla.Dist.Ct.App. 1980). We thus turn to the question of whether Pencie Wester's constructive fraud in obtaining the tax deeds prevents them from constituting effective title transactions or roots of title under the Act.

Under the MRTA a title transaction is "any recorded instrument or court proceeding which affects title to any estate or interest in land...." Fla.Stat. § 712.01(3). By itself this statutory definition sheds little light on the question of whether a deed obtained through constructive fraud can constitute a title transaction. The phrase "affects title" is somewhat ambiguous and could be read to require an actual change in the property's ownership. When viewed in light of the cases interpreting the MRTA, however, there is little doubt that

8. Pencie Wester obtained and recorded the tax deeds between 1943 and 1946. Harrell did not bring this action until 1984, some thirty-eight years after the last tax deeds were recorded.

9. The court indicated that its decision might be different if the rights of third parties were involved.

Pencie Wester's purchases of the tax deeds were title transactions under the Act.

In *ITT Rayonier, Inc. v. Wadsworth,* 346 So.2d 1004 (Fla.1977), the Florida Supreme Court had occasion to interpret the term "title transaction." At issue in that case was whether a life tenant's execution of a deed in 1937 purporting to convey the entire fee to herself and her son as tenants in common could serve as a title transaction under the MRTA. The appellants, who held the remainder following the life estate, argued that the deed did not affect title and therefore could not constitute a title transaction. The court rejected the appellants' argument. In interpreting the term "title transaction" the court quoted with approval the decision of the District Court of Appeal in *Marshall v. Hollywood, Inc.,* 224 So.2d 743 (Fla.Dist.Ct.App.1969), *aff'd,* 236 So.2d 114 (Fla.), *cert. denied,* 400 U.S. 964, 91 S.Ct. 366, 27 L.Ed.2d 384 (1970):

> The word 'affecting' as it is used in the second sentence of Section 712.02 in the clause 'affecting the title to the land' does not carry the narrow meaning of 'changing or altering.' The word is used in the broader sense meaning 'concerning' or 'producing an effect upon.' *In this broad sense, even a void instrument of record 'affects' land titles by casting a cloud or a doubt thereon.*

346 So.2d at 1010 (emphasis added). The court concluded:

> The 1937 deed, whether partially ineffectual or not, "affected title" and was a "title transaction" as those terms are construed in *Marshall.*
>
> ... When the 1937 deed was executed Lotta continued to possess only a life estate in the former homestead, yet, on its face, the deed conveys it in fee simple absolute. By attempting to enlarge her estate ... the deed affects title.

*Id.; see also St. Joe Paper Co.,* 364 So.2d at 447–48 (quoting with approval the interpretation of the term "title transaction" in *ITT Rayonier* and *Marshall* ).

Although *ITT Rayonier* did not involve deeds obtained through constructive fraud, the Florida Supreme Court's broad defini-

tion of the term "title transaction" is instructive. If a deed purporting to convey property the grantor does not own can serve as a title transaction or root of title under the MRTA, it is hard to imagine that a valid tax deed taken in violation of a fiduciary relationship could not.

The MRTA's definition of the term "root of title" is also revealing. Under the scheme of the MRTA the terms "title transaction" and "root of title" are intertwined. In essence the root of title is the recorded title transaction from which the Act's thirty year limitation period begins to run.

The MRTA defines the term "root of title" as

> *any title transaction purporting to create or transfer the estate* ... and which is the last title transaction to have been recorded at least thirty years prior to the time when marketability is being determined.

Fla.Stat. § 712.01(2) (emphasis added). The use of the word "purporting" strongly suggests that the Florida Legislature did not intend that only valid or effective deeds could be roots of title under the MRTA. The Florida Supreme Court reached this conclusion in *ITT Rayonier.* In discussing the definition of the term "root of title" the court stated:

> It should be obvious that the deed "purports" to create or transfer an estate. Purport is defined in Webster's 3d New International Dictionary, unabridged (1962), as "profess outwardly: have the often specious appearance of being." Certainly the Legislature intended the word "purport" to have its accepted meaning.

346 So.2d at 1010.

Finally, two decisions from the Florida District Courts of Appeal involving fact situations closely analogous to the one in this case buttress the defendants' argument that the tax deeds purchased by Pencie Wester were title transactions and thus effective roots of title under the MRTA. In *Allen,* 383 So.2d 1171, a co-owner of real property purchased and recorded in his name alone a tax deed to the property

without the knowledge of his co-tenant. Thirty-five years later the co-tenants' successors in title became involved in a dispute over title to the property, and the court was faced with the question of whether the tax deed was a root of title under the MRTA that operated under the Act to extinguish the other co-tenant's interest. The court answered the question in the affirmative.

The *Allen* court recognized the common law rule that a tax deed to one co-tenant is simply a payment of taxes that does not divest the other co-tenant of his interest in the property. *Id.* It went on to hold, however, that the non-paying co-tenant's interest was extinguished after thirty years by the operation of the MRTA. *Id.* at 1171–72. The court stated:

> The certainty of title necessary under MRTA requires that appellee's title be cured to the exclusion of appellants' interest. Appellants could have maintained their interest by filing the notice prescribed by Section 712.05 ... within the thirty year period.

*Id.* at 1172 (citation and footnote omitted).

In *Hope v. Hope*, 410 So.2d 212 (Fla.Dist. Ct.App.1982), the court was faced with a fact situation virtually identical to that in *Allen*. The court rejected the appellants' suggestion that because the rights of third parties were not involved the rule set forth in *Allen* should not apply. *Id.* at 213. The court stated:

> The appellants' attempts to distinguish *Allen* are unavailing. MRTA's language is clear and broad, and its purpose is to allow persons to rely upon marketable record title as defined in section 712.02. We therefore apply the reasoning of *Allen* to the circumstances of this case.

*Id.*

We conclude that Pencie Wester's purchases of the tax deeds were title transactions under section 712.02 and that the recorded deeds were thus roots of title under the MRTA. The tax deeds are clearly roots of title as that term has been interpreted by the Florida Supreme Court. Neither the language of the MRTA or the Florida cases interpreting it suggest that it is relevant how the deeds were obtained. The rule urged by Harrell—that a deed obtained by fraud cannot be an effective root of title under the MRTA, at least when the rights of third persons are not involved—simply finds no support in the Act. Although the Florida Legislature created a number of exceptions to the MRTA's operation, *see* Fla.Stat. § 712.03, it did not create an exception for deeds obtained through fraud and it is not for us to apply such an exception in this case.

Because the tax deeds Pencie Wester obtained between 1943 and 1946 are effective roots of title under the MRTA, Harrell's interest in the property is extinguished absent the applicability of one of the exceptions listed in section 712.03. In the district court Harrell argued that his interest in the property was preserved because he fell within the exception listed in section 712.03(3). The district court did not address this issue in light of its finding that the tax deeds were not effective roots of title under the MRTA.

Section 712.03(3) provides that marketable record title under the Act does not extinguish the "[r]ights of any person in possession of the lands, so long as such person is in such possession." Harrell argued that although he and his predecessors in interest were not in actual possession of the property, the fiduciary relationship between Rebekah Harrell and Pencie Wester and the co-beneficiary relationship among the children allows him to adopt the defendants' possession as his own constructive possession.

Harrell's argument does not require extensive discussion. Suffice it to say that the Florida Supreme Court has rejected a similar argument. *See ITT Rayonier*, 346 So.2d at 1011. In any event, the district court found as a matter of fact that Pencie Wester had repudiated any trust relationship as early as 1959. This finding, which is not clearly erroneous, precludes any argument that Harrell was in constructive possession of the property through the

trust relationship.[10]

## III.

In short, we conclude that Harrell's claim is barred by the MRTA. We therefore reverse the district court's judgment and remand the case for entry of judgment in accordance with this opinion.

REVERSED and REMANDED.

---

**10.** As the district court noted in its order denying the parties' motions for summary judgment, constructive possession ends upon the repudiation of the trust relationship. *Cf. Chasteen v. Chasteen,* 213 So.2d 509, 511–12 (Fla.Dist.Ct. App.1968) (co-ownership creates a presumption of possession by each owner which will not be impaired absent a clear and direct act inconsistent with the rights of co-tenants).